**Arthur Ross HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 65762, 65763.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1983.

**482**

Ross Teter, on appeal only, Dallas, for appellant.

Henry Wade, Dist. Atty., Gilbert P. Howard, Christopher Milner and William M. Fry, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION

W.C. DAVIS, Judge.

Appellant was convicted of the offenses of burglary of a building and burglary of a vehicle. In each case the State alleged that appellant had been previously convicted of credit card abuse and possession of marihuana. Upon the jury's finding that these allegations were "true," the trial court assessed appellant's punishment in each case at life imprisonment.

The sufficiency of the circumstantial evidence is challenged in both causes.

The evidence adduced at trial reflects that Scott Eric Rogers, accompanied by Brenda Lynn Cash, pulled up and parked his company van at the Mid-America Office building, where he worked, at approximately 11:00 p.m. on June 30, 1979. The couple entered the building, but after only five minutes Cash went back out to get her purse which she had left on the front seat of the unlocked van. Unable to find her purse, Cash reported this to Rogers who instructed her to call the police and lock herself inside the building. Rogers went outside, circled the office building, then started down an alley where he found Cash's makeup case. He went back to his van, picked up a flashlight and began looking on the ground. In a large trash dumpster, he found "some of the stuff that was in her purse." Rogers continued his search in the vicinity.

In the interim, Mounir Korban, the cook at Woody's Restaurant (which is adjacent to the Mid-America Building) was busy cooking sometime between 11:00 and 11:15 p.m., when he noticed a man standing in the corner of the kitchen by a grease barrel; the man was taking a white hose off the barrel. Korban said he "didn't really become very suspicious because I thought he had something to do with the owner of the restaurant," though he noticed the man was wearing a sun visor held on by a green strap around his head.

At approximately 11:40 p.m., Abdel G. Zoubi, the owner of Woody's, was on his way to the restaurant, which he testified

was open from 6:00 p.m. to midnight. Arriving at the restaurant, Zoubi observed a black man coming out of the delivery room. Zoubi testified he first thought the man had made a delivery which was unusual at that hour. He then decided that the man was a friend of the cook.

Zoubi went directly into the kitchen where he and Korban advised each other that the man was not a friend of either. Zoubi went to the grease barrel near which Korban had seen the intruder; in the barrel he found a woman's cloth purse. Zoubi immediately went to his office and found the door open. Finding everything in his desk to be in order, Zoubi noticed that a lock on a "metal closet in the wall" was bent.

Zoubi thought he might catch the interloper, so he went outside, where he encountered Eric Scott Rogers. Asked by Zoubi, "What are you doing?," Rogers replied, "I'm looking for ... a purse." Zoubi took Rogers to see the purse he had found in the barrel and Rogers identified it as belonging to Cash.

Rogers, Cash and Zoubi spoke with Irving police officer Bill Brazle. Walking through the restaurant complex, Cash observed her comb sitting on Zoubi's desk. Zoubi checked for a deposit bag in a drawer and found it was gone.

Officer Brazle then received a call that a person matching the description of the suspect could be found on a nearby corner, standing by an automobile. Brazle drove to the corner where he encountered appellant standing next to his car. Brazle requested identification from appellant and while appellant was apparently attempting to comply with the officer's request the two witnesses from Woody's arrived and immediately identified appellant as the person they had earlier seen in the restaurant.

Appellant was arrested for "investigation of burglary" and taken to jail. The car he was standing near was impounded. At the police station, Rogers and Cash were shown the car and Rogers identified several tools on the front seat as having been taken from his van.[1] After going back inside the jail, Brazle searched appellant and found seven twenty-dollar bills. Brazle had been told by Zoubi that seven twenty-dollar bills were missing from his office.

▮ Appellant was found in possession of the fruits of both offenses. Appellant was positively identified as having been in the private area of Woody's restaurant where one offense took place, and where the purse stolen in the earlier burglary was discovered, at the approximate time of the offenses. Where there is independent evidence of a burglary, unexplained possession of the recently stolen goods may constitute sufficient evidence of guilt to support a conviction. *Williams v. State,* 621 S.W.2d 613 (Tex.Cr.App.1981); see also *Mulchahey v. State,* 574 S.W.2d 112 (Tex.Cr.App.1978). Such evidence is sufficient in the instant cases. Ground of error one is overruled in each case.[2]

1. It was apparently later that a sun visor on a green strap was also found in appellant's car; this was identified by Korban at trial as resembling the one worn by the intruder in the kitchen of Woody's on the night of the offense.

2. The dissent finds a fatal variance between the indictment which alleged entrance to a building not then and there open to the public, and the proof which showed entrance only to *portions* of a building not then open to the public, such variance raised by appellant neither in the trial court nor before this Court.

   V.T.C.A. Penal Code, Section 30.02, defines burglary as follows:

   "(a) A person commits an offense if, without the effective consent of the owner, he:

   "(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft...."

   The dissent apparently construes "enter[ing] ... any portion of a building ... not then open to the public" as a mode of committing burglary distinct from "enter[ing] ... a building ... not then open to the public", and has accordingly determined that proof of the former does not support an allegation of the latter.

   As conceded by the dissent, the evidence in this case is ample to establish the commission of a burglary. See *Williams v. State,* 537 S.W.2d 936 (Tex.Cr.App.1976). Also, the indictment in question is sufficient to allege the commission of a burglary. But, while the dissent finds reversible error, asserting that proof of wrongfully entering a non-public *portion* of a building is at variance with the indictment, we

■ In ground of error two in the conviction for burglary of a building, appellant contends that the trial court committed fundamental error in failing to charge the jury on the law of circumstantial evidence. This contention has no merit. *Hankins v. State,* 646 S.W.2d 191 (1983).

■ In Cause No. 65,762, the conviction for burglary of a vehicle, appellant's second and third grounds of error complain of the trial court's overruling his motion to suppress evidence obtained as a result of illegal seizures and searches of his person and automobile. We need not recount the evidence because the point was rendered moot when the State offered items belonging to Eric Scott Rogers which were found in appellant's car, and defense counsel affirmatively stated, "no objection." Compare *McGrew v. State,* 523 S.W.2d 679 (Tex.Cr. App.1975) with *Graves v. State,* 513 S.W.2d 57 (Tex.Cr.App.1974).

Appellant's second and third grounds of error are overruled.

In his third ground of error in Cause No. 65,763, appellant contends that the trial court erred in overruling his motion to suppress the seven twenty-dollar bills seized from him after he was arrested. He maintains that the arresting officer lacked probable cause to arrest, and further that the search of his person was unlawful in that a warrant was not obtained and exigent circumstances did not exist.

The testimony adduced from Officer Brazle at the suppression hearing reveals that after receiving a report of two burglaries, Brazle arrived at Woody's Restaurant where he conducted an investigation. During the course of the investigation, Brazle spoke to the two witnesses from Woody's who gave him a general description of a black man "they had seen inside the Woody's Restaurant where he shouldn't have been." Brazle thereafter received the call relating to the suspect on the nearby corner. While Brazle attempted to discover the identity of the suspect, the two witness-

construe "(or any portion of a building)" as simply a parenthetical elucidation of the statutory meaning of "building": an allegation of wrongful entry of a building necessarily includes an allegation of wrongful entry of a portion thereof.

In *Williams v. State,* supra, the Court dealt with a closely analogous situation. Convicted of burglary of a building, the appellant argued that the charge did not conform to the allegations of the indictment in that the indictment charged that the appellant ". . . enter[ed] a building which was not open to the public . . ." while the charge stated ". . . that a person commits an offense, if . . . he enters a building (*or any portion of the building*) not then open to the public. . . ." [Emphasis in original]. The evidence revealed the appellant's entry to a non-public inner office of a hospital which itself was open to the public.

The Court in *Williams* found the indictment sufficient to give notice to the appellant, and held that "the charge of the court did not authorize a conviction on a different theory from that on which appellant was indicted." Finding the charge to be consistent with the allegations of the indictment, the Court upheld the conviction in the face of proof of entry only to *portions* of the hospital not then open to the public; a charge that includes the phrase "(or any portion of the building)" is therefore consonant with an indictment that omits that parenthetical; the latter encompasses the former.

In the well reasoned opinion of *Hughes v. State,* 625 S.W.2d 827 (Tex.App.—Houston [14th] 1981), the appellant argued that entering a "building," and entering a "portion of a building," were two distinct methods of committing burglary, creating a variance between the indictment which alleged entry to a "building," and the proof which revealed entry to a non-public engine/locker room inside a building containing a public cafeteria. (The provisions of the charge tracked the language of the indictment, making the question identical to that in the case at bar.) Finding no variance, the court held that entering "a building (or any portion of a building)," is a *single* method of committing burglary, and "evidence of an illegal entry of a closed room will support a conviction for burglary of a building."

As in *Williams,* supra, where the provisions of the charge were held not to expand the allegation of the indictment, in the case at bar, the proof adduced at trial was similarly within the limits authorized by the charge for determining the guilt of the accused. If such proof in this case were found to be *outside* the limits of the charge, as the dissent contends, the charge in *Williams* would have fatally enlarged the allegations of the indictment therein. *Gooden v. State,* 576 S.W.2d 382 (Tex.Cr.App. 1979); *Davis v. State,* 557 S.W.2d 303 (Tex.Cr. App.1977); *Robinson v. State,* 553 S.W.2d 371 (Tex.Cr.App.1977).

es from Woody's arrived and positively identified appellant as the man they had seen in the restaurant. Appellant was arrested and taken to the Irving City Jail where a search of his person disclosed the seven twenty-dollar bills later admitted into evidence.

In *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the United States Supreme Court made its most recent analysis of the probable cause standard, and stated as follows:

"As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed.2d 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Moreover, our observation in *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding 'particularized suspicion,' is equally applicable to the probable cause requirement:

" 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " 103 S.Ct. at 1543.

■ We find that probable cause existed to justify appellant's arrest. The facts available to Brazle at the time of the arrest,

to wit: the receipt of two burglary complaints related in both time and place, an investigation revealing an unauthorized entry of Woody's, and two eye witnesses identifying appellant as the intruder, would "warrant a man of reasonable caution in the belief" that a burglary may have been committed, and that appellant may have committed it. While not yet reaching a "hard certainty," Brazle's knowledge undoubtedly rose to the level of probable cause to arrest. The arrest was lawful and therefore the search at the city jail was also lawful irrespective of the existence of exigent circumstances. *King v. State,* 166 Tex.Cr.R. 231, 312 S.W.2d 501 (1958); *Heck v. State,* 507 S.W.2d 737 (Tex.Cr.App.1974); *Warrick v. State,* 634 S.W.2d 707 (Tex.Cr. App.1982). The ground of error is overruled.

■ By ground of error four in both convictions, appellant contends he was denied due process of law when the prosecutor stated "an accused [would] exercise his right not to appear as a witness against himself in order to prevent the State from impeaching him with prior criminal convictions," during voir dire examination.

The record, however, reflects that during a rather lengthy discourse on the function of the jury—specifically, judging the credibility of witnesses—the prosecutor stated:

"Fifthly, under the laws of the State of Texas anybody that takes the witness stand can have their credibility undermined by letting you know, as a member of the jury, about any past convictions they may have for felony offenses or for misdemeanors involving moral turpitude. Now, that's called impeachment. Their testimony may be impeached with their prior felony convictions or with misdemeanors involving moral turpitude. You can use that in weighing the credibility of anybody you heard from the witness stand who fitted into that category of being an offender of that type."

Appellant contends that when he did not thereafter testify at trial, "every juror knew the reason ... was [that] he did not

want to be impeached with his prior criminal record."

This novel contention is without merit. No objection was raised to these comments of the prosecutor and indeed, we wonder on what basis one might be, since the statements and their context represent a perfectly legitimate topic for discussion by either party during jury voir dire.

Ground of error four is overruled.

■ Appellant's fifth ground of error in both cases must also be overruled. There he complains of the cruel and unusual punishment he will suffer as a result of his conviction under the Texas habitual criminal statute, V.T.C.A. Penal Code, Article 42.12(d). This contention has been repeatedly rejected by the courts. See *Rodriguez v. State,* 614 S.W.2d 448 (Tex.Cr.App. 1981); *Thomas v. State,* 543 S.W.2d 645 (Tex.Cr.App.1976); *Thrash v. State,* 500 S.W.2d 834 (Tex.Cr.App.1973); see also *Rummel v. Estelle,* 587 F.2d 651 (5th Cir. 1978); and *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

Ground of error five is overruled.

■ By his sixth ground of error in both cases, appellant complains of the State's systematic exclusion of black persons from his petit jury through use of peremptory challenges. In 28 pages of argument and authority he contends this denied him due process and equal protection of the law. We need not address the merits of this contention, however, because the brief contains no reference "to that part of the ruling of the trial court ... which [is] designated to be complained of"[3] in this regard; further, the record contains no indicia in any form of the racial composition of the jury which convicted appellant.[4] Under these circumstances, this sixth ground of error is overruled.

3. Article 40.09, Sec. 9, V.A.C.C.P.

4. And almost needless to say, neither does the record contain the factual basis necessary to a claim that the State has systematically used peremptory challenges against black persons *over a period of time* in order to wholesale exclude members of that race from participating in the judicial process in Dallas County. See *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

The judgments of conviction in Cause Nos. 65,762 and 65,763 are affirmed.

CLINTON, Judge, dissenting.

The evidence is sufficient to exclude every reasonable hypothesis other than that appellant committed the burglary of Eric Scott Rogers' van. The burglary of Woody's Restaurant, however, is another matter.

The statute under which appellant was prosecuted in Cause No. 65,763, V.T.C.A. Penal Code, § 30.02, provides in part:

"(a) A person commits an offense if, without the effective consent of the owner, he:

(1) *enters* a habitation, or a building (or *any portion of a building*) *not then open to the public,* with intent to commit a felony or theft...."[1]

This provision was adopted in substance by the Legislature without modification from § 30.02 of the Texas Penal Code, *A Proposed Revision,* State Bar Committee on Revision of the Penal Code, (Final Draft 1970).

"As in present law, ... *one who,* with intent to commit a felony or theft, *enters a building open to the public* or otherwise has consent to enter, such as a servant ..., *commits no burglary* and can be prosecuted only for the commission or attempted commission of the offense he intended, unless he remains concealed after consent to his presence has terminated. *Private offices and other portions of a building not open to the public are covered, however; one who enters a storeroom closed to the public in a store otherwise open to the public* (with the requisite intent) *commits a burglary.*"

*Id.,* Committee Comment, at 203.

In the instant case, the State established Woody's Restaurant was open for business

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

from 6:00 p.m. to midnight on the night in question, but the delivery room—where Zoubi saw appellant at approximately 11:45 p.m.—was not open to the public. Further, Zoubi testified as follows:

"Q: What is this room right here (indicating)?

A: That's *my office.*

Q: Okay, and is that always locked?

A: Yes, sir.

Q: *Is that open to the public?*

A: *No.*

Q: Ever?

A: No, never.

Q: And is this *area* [delivery room] right here (indicating) open to the public?

A: Until 1:00 o'clock in the afternoon.

Q: Until 1:00 o'clock in the afternoon?

A: Not to the public, though, to the delivery man. He will knock on the door and we will open the door for him.

Q: Okay. In other words, this *area* (indicating) leading in from the service door and going back towards the kitchen *is not open to the public* at any time, is that correct?

A: Correct."

From this testimony it may be seen that the State established Woody's Restaurant was open to the public, but the portion of Woody's appellant entered was not so open. Coupled with proof of appellant's intent to commit theft, the evidence was adequate to establish a burglary proscribed by law.

But the indictment returned against appellant alleged that he did:

"... knowingly and intentionally enter a *building not then and there open to the public,* without the effective consent of

Abdel G. Zoubi, the owner thereof, with intent to commit theft...." [2]

Because the evidence adduced established the building containing Woody's was open to the public, we ought to hold it is insufficient to support the jury's verdict of "guilty" in Cause No. 65,763.[3] I respectfully dissent.

ODOM and TEAGUE, JJ., join.

---

**2.** In authorizing the jury to return a verdict of guilty in this cause, the trial court conformably instructed:

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Arthur Ross Harris, did, ... knowingly or intentionally *enter a building not then and there open to the public,* without the effective consent of Abdel G. Zoubi, the owner thereof, with intent to commit theft, you will find the defendant guilty."

**3.** The majority puts too much misplaced reliance in *Williams v. State,* 537 S.W.2d 936

(Tex.Cr.App.1976). The opinion in that case does indeed set out pertinent parts of both the indictment and charge to the jury at page 939; from there we learn that the latter instructed the jury that one element of the offense of burglary is entry of "a building (or any portion of the building) not then open to the public." That was not done in the instant cause, see note 2 *ante,* so factual finding of the jury is that Zoubi's building was "*not* then and there open to the public"—yet the undisputed evidence is that in truth it was so open.