TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-99-00165-CR






Lee Eric Cloud, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 98-609-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







 The opinion and judgment issued herein on April 27, 2000 are withdrawn, and the
following opinion is substituted for the earlier one.

 A jury convicted Lee Eric Cloud of his third offense of driving while intoxicated
("DWI") and assessed punishment at ten years in prison. See Tex. Penal Code Ann. § 49.04
(West Supp. 2000). He contends that the trial court erred by admitting evidence of prior
convictions and sobriety tests without using certain procedures. He also contends that the
evidence was legally and factually insufficient to prove he was the same individual who had been
convicted of one of the previous DWI offenses. We will affirm the judgment.


BACKGROUND


 Williamson County Deputy Sheriff Steven Hall noticed that a car driving at 2:15
a.m. had one headlight out. He stopped the car and asked the driver, Cloud, for his license. 
Cloud shuffled through a stack of cards in his wallet for thirty to forty-five seconds, passing his
license more than once. Hall noted that Cloud had slightly slurred speech, watery and bloodshot
eyes, and exuded a strong odor of alcohol. Hall asked Cloud if he had been drinking alcoholic
beverages; Cloud responded, "Yes, a lot, at the Anderson Mill Bar." When Cloud got out of the
car, he needed to steady himself by leaning on the car.

 Cloud performed three field sobriety tests ("FSTs"): (1) finger dexterity, in which
he was to touch his fingers with his thumb sequentially while counting forward and backwards
from one to four; (2) alphabet recitation; and (3) walk-and-turn, in which he was to walk a
straight line for nine steps, turn, and walk back. Instead of just listening to the instructions for
the finger dexterity test, Cloud tried to do the test while Hall was demonstrating and consistently
counted numbers out of sequence. He then recited the letters of the alphabet out of sequence. 
During the walk-and-turn test, Cloud again failed to follow instructions. He did not walk heel-to-toe, he raised his arms to shoulder level, and did not count aloud while taking the prescribed nine
steps. He declined to do the one-leg stand, claiming his right leg was injured. Cloud talked
ramblingly most of this time after he got out of the car, despite Hall's instruction that he cease
talking. (There was testimony that Cloud often reacted to stress and authority by talking a lot and
sounding cocky.) Austin Community College police officer Kevin Jones, who was riding along
with Hall, confirmed Hall's testimony about the walk-and-turn test and Cloud's rambling speech.

 Hall arrested Cloud for DWI and drove him to the Williamson County Jail. On the
trip, Cloud asked Hall to increase the volume of the radio during a song. Cloud sang the song
with the radio, then continued singing that song after it was over. Cloud's carefree attitude
further indicated intoxication to Hall. Cloud declined to give a breath specimen. Hall
readministered the finger dexterity and walk-and-turn tests at the station and videotaped his
performance. Cloud again departed from the instructions for the finger dexterity test, counting
with different numbers in a different sequence. He recited the alphabet correctly this time, but
then volunteered to recite it backwards; he failed to recite it backwards correctly. He declined
to perform the walk-and-turn test. Hall said Cloud swayed slightly and failed on his first try to
put his hand in his pocket.

 Before trial, the court denied motions by Cloud for a pre-trial inquiry into the FSTs
and for a stipulation to his prior DWI convictions in exchange for the State's not presenting
evidence of them at trial.


DISCUSSION


 By his first point of error, Cloud contends that the trial court abused its discretion
by failing to require the State to enter into a stipulation regarding his prior DWI convictions. See
Old Chief v. United States, 519 U.S. 172 (1996); Tamez v. State, 11 S.W.3d 198 (Tex. Crim.
App. 2000). He offered to stipulate to his prior DWI convictions in exchange for the State's not
presenting evidence of those convictions during the culpability phase of the trial. He argues that
the district court should not have admitted the prior convictions because the unfair prejudicial
effect of their admission outweighs their probative value. See Tex. R. Evid. 403. He argues that
his stipulation would allow the State to avoid the unfairness while proving its case.

 Cloud waived any error with regard to the admission of the 1993 conviction when
he expressly stated during trial that he had "no objection" to the admission of that conviction. 
See Harris v. State, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983).

 We will assume without deciding that the trial court erred by refusing to accept the
stipulation with respect to the 1995 conviction. (1) See Tamez, 11 S.W.3d at 202. Although the trial
court declined the stipulation well before Tamez was handed down, the Tamez court applied its
rule retrospectively, then remanded for the appeals court to consider whether the error was
harmful. Id. at 203. 

 We nevertheless find no harm from the admission of proof of the judgments. 
Under the stipulation, the State was to read the indictment containing allegations of the two prior
convictions; the jury would, sometime before verdict, be instructed that Cloud had admitted the
prior convictions. The evidence adduced at trial--his current arrest fingerprint card, two prior
judgments, and his official driving record--probably took longer than reading a stipulation, but did
not provide more proof. The State's witness compared the fingerprints taken on Cloud's arrest
with those on his 1993 conviction and on his driving record, which referred to his 1995
conviction. The State did not elicit facts about the prior convictions other than their existence. 
The testimony regarding the convictions centered on authenticating the judgments. (2) On cross-examination, the defense elicited testimony regarding the weakness of the tie between the 1995
judgment and Cloud--the lack of a thumb print or Cloud's signature, the presence of another's
name in the waiver of rights section. These weaknesses also undermined the driving record
because it was dependent on the identity of the person convicted in the 1995 judgment. Once the
testimony regarding the convictions ended, no one mentioned them again until the court instructed
the jury not to consider the evidence of the convictions for any purpose other than whether Cloud
committed the previous offenses. The testimony to authenticate the previous convictions did not
emphasize Cloud's propensity for drunk driving and exposed weaknesses in the State's proof. We
conclude that this procedure did not hinder Cloud's defense more than the stipulation would have. 
We overrule point one.

 By point of error four, Cloud contends that the trial court erred by refusing Cloud's
request for a preliminary hearing outside the presence of the jury on the scientific reliability of
the field sobriety tests administered to Cloud. After a hearing, the trial court denied Cloud's
motion in limine requesting a hearing on the admissibility of all testimony relating to Cloud's
performance on any FST. At the evidentiary hearing on Cloud's motion to suppress statements,
admissions, or confessions made to the police officers, the arresting officer testified regarding the
FSTs, describing the tests as well as Cloud's performance of them. The officer also testified
about Cloud's other actions indicating intoxication.

 We conclude that the trial court did not err by refusing to hold a pre-trial hearing
on the admissibility of the FSTs and the police officer's qualification to testify about Cloud's
performance on them. Lay opinion testimony by a police officer generally is admissible to prove
a defendant's intoxication. See Emerson v. State, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994)
(citing Vaughn v. State, 493 S.W.2d 524, 525 (Tex. Crim. App.1972)). Unlike the horizontal
gaze nystagmus test ("HGN"), these tests--the walk-and-turn, alphabet recital, and finger dexterity
tests--are not based on any novel scientific theory. The State introduced the testimony to show
impairment of physical and mental faculties. These FSTs involve observation of directed, basic
tasks and are barely distinguishable from lay observation of undirected behavior. There was no
reason to preliminarily inquire into the scientific basis of the tests outside the presence of the jury.

 Even if the court erred by not holding the pre-trial hearing, any harm was alleviated
by the in-court testimony explaining what behaviors Cloud exhibited. As set out above, Deputy
Hall testified that Cloud's performance on the FSTs indicated impairment of Cloud's physical and
mental faculties stemming from alcohol intoxication. He described the behaviors that led him to
that conclusion. Cloud's nearly incessant rambling, talking, and singing while being field tested,
taken to jail, and tested at the jail also indicated intoxication to officers Hall and Jones. Hall also
saw Cloud sway slightly and fail on his first try to put his hand in his pocket. On cross-examination, Hall made some concessions that helped Cloud. Hall admitted that one could drink
without being intoxicated, and that one could have glassy eyes, slurred speech, and confusion on
the alphabet for several reasons other than intoxication. He conceded that an injured leg, the
uneven pavement, the faded line on the street, and the flashing police lights might have caused
Cloud difficulty with the walk-and-turn test. Hall stated that the finger dexterity and alphabet
recital tests were not part of the National Highway Traffic Safety Administration's ("NHTSA")
standard battery of FSTs, but the one-leg stand and walk-and-turn (along with the HGN test, not
administered here) were. Hall admitted that he did not know of any scientific studies on the
reliability of the finger dexterity and the alphabet recital. He was not certified to give the FSTs
until shortly after the arrest. He had, however, administered the walk-and-turn and one-leg stand
many times before arresting Cloud. He also said that the certification did not alter the way he
administered the test. Hall's testimony alleviated the harm by allowing jurors to draw their own
conclusions based on Hall's field observations underlying his opinion.

 Finally, we note that the jurors did not have to rely entirely on the officers'
testimony. They could see Cloud's demeanor and performance on the videotape, and the court
did not permit the officer to give his opinion regarding Cloud's intoxication based on the
videotaped tests. Cloud's admission that he had drunk "a lot" also supported the officers'
evaluation of Cloud's condition. We overrule point four.

 By points of error two and three, Cloud contends that the evidence is legally and
factually insufficient to prove he was the person convicted of the predicate 1995 DWI offense. 
When reviewing the legal sufficiency of the evidence under point of error two, we will view the
evidence in the light most favorable to the prosecution to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson
v. Virginia, 443 U.S. 307, 318-19 (1979). When reviewing the factual sufficiency of the evidence
under point of error three, we will view the evidence without the prism of "in the light most
favorable to the prosecution"; we can set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. See Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996). The jury is the sole judge of the credibility of the
witnesses and of the weight to give their testimony. Miller v. State, 909 S.W.2d 586, 593 (Tex.
App.--Austin 1995, no pet.).

 Before we assess the sufficiency of the evidence, we must establish the scope of the
evidence to review. The State urges that we consider some testimony from the punishment phase
to assess the sufficiency of the evidence at the culpability phase. "[I]t has long been the law of
this State that in reviewing the sufficiency of the evidence, this Court will look to all of the
evidence in the case that was adduced at both stages of the trial, and not just that offered or
presented by the State." DeGarmo v. State, 691 S.W.2d 660, 661 (Tex. Crim. App. 1985). (3) We
therefore will consider evidence from both phases of the trial when assessing the sufficiency of
the evidence.

 Cloud challenges the sufficiency of the evidence to support the finding that he was
the person named in the 1995 judgment. The 1995 judgment names "Lee Eric Cloud" but it
contains no independent evidence linking that name to this defendant; unlike the 1993 judgment,
there is no fingerprint from Cloud on the 1995 judgment. As Cloud noted at trial, the defendant's
waiver of constitutional rights attached to the 1995 judgment states "I, Jim Greenfield, the
defendant" underneath the "State v. Lee Eric Cloud" style. Cloud argues that other culpability-phase evidence of the 1995 conviction--his driving record from the Department of Public Safety--is
insufficient because it is dependent on the 1995 judgment; the DPS's reliance on that judgment
cannot retroactively supply the requisite evidence tying the 1995 judgment to Cloud. Without
sufficient evidence of this second prior conviction, Cloud contends the State did not carry its
burden of proof to convict him of felony DWI.

 The State contends that the evidence was legally and factually sufficient. It relies
on the culpability phase testimony matching the fingerprint on the driving record to the fingerprint
on the 1993 judgment, plus the picture on the driving record identified as the Lee Eric Cloud on
trial here, to prove that the person convicted in 1995 was the same Lee Eric Cloud. It also cites
the punishment-phase testimony of a probation officer who identified Cloud as the person he
supervised in connection with the 1995.

 We conclude that the evidence is legally and factually sufficient to support the
finding that Cloud was the person named in the 1995 judgment. The punishment-phase testimony
of the probation officer is particularly persuasive, because previous convictions can be proved by
the testimony of a person who personally knows defendant and the fact of his prior conviction,
and identifies him in court. Daniel v. State, 585 S.W.2d 688, 690 (Tex. Crim. App. 1979). We
also note, in addition to the evidence cited by the parties, that the indictment underlying the 1995
judgment alleges that the defendant was convicted of his first DWI offense on December 27,
1993--the date of Cloud's unchallenged 1993 conviction. (We note, however, that the 1995
indictment refers to the 1993 conviction by the same cause number as the 1995 conviction.) 
Though this commonality does not by itself prove Cloud's identity, it is an additional indicator
that the Cloud in the 1995 judgment is the same Cloud before us. We are cited to no evidence
that the Cloud convicted here was not the person named in the 1995 judgment; though Cloud had
no burden to produce such evidence, the absence of countervailing evidence is a factor to consider
in weighing the sufficiency of the evidence. We conclude the evidence is legally and factually
sufficient and overrule points two and three.


CONCLUSION


 Having overruled all points of error, we affirm the conviction.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: May 25, 2000

Do Not Publish

1. We note that Cloud did not reiterate his pretrial objections to the admission of the prior
convictions during the trial. For purposes of this opinion, we assume without deciding that his
pretrial objection preserved any error without the need for a trial objection.
2. This was a curious exercise, given Cloud's pre-trial offer to stipulate to the convictions,
though Cloud certainly was entitled to have the State prove its case. The battle over admissibility
also clearly showed the risk the State took by declining Cloud's offer to stipulate.
3. The court of criminal appeals has limited the DeGarmo holding, but on other grounds. See
Leday v. State, 983 S.W.2d 713, 724-25 (Tex. Crim. App. 1998). The DeGarmo court held that
a defendant's judicial admissions at the punishment stage waive challenges to errors made at the
culpability phase. See 691 S.W.2d at 661. The Leday court excluded from that sweeping waiver
certain values fundamental to the justice system. See 983 S.W.2d at 724-25; see also Gutierrez,
8 S.W.3d 739, 744-45 (Tex. App.--Austin 1999, no pet.). Among those fundamental values is the
requirement that convictions be supported by sufficient evidence. Id. at 725. The Leday court
did not, however, hold that appellate courts could not consider evidence adduced at the
punishment phase when reviewing the sufficiency of the evidence to support a conviction. 
Further, there is no judicial admission in this case; rather, the State rejected Cloud's offer to
stipulate.


 is dependent on the 1995 judgment; the DPS's reliance on that judgment
cannot retroactively supply the requisite evidence tying the 1995 judgment to Cloud. Without
sufficient evidence of this second prior conviction, Cloud contends the State did not carry its
burden of proof to convict him of felony DWI.

 The State contends that the evidence was legally and factually sufficient. It relies
on the culpability phase testimony matching the fingerprint on the driving record to the fingerprint
on the 1993 judgment, plus the picture on the driving record identified as the Lee Eric Cloud on
trial here, to prove that the person convicted in 1995 was the same Lee Eric Cloud. It also cites
the punishment-phase testimony of a probation officer who identified Cloud as the person he
supervised in connection with the 1995.

 We conclude that the evidence is legally and factually sufficient to support the
finding that Cloud was the person named in the 1995 judgment. The punishment-phase testimony
of the probation officer is particularly persuasive, because previous convictions can be proved by
the testimony of a person who personally knows defendant and the fact of his prior conviction,
and identifies him in court. Daniel v. State, 585 S.W.2d 688, 690 (Tex. Crim. App. 1979). We
also note, in addition to the evidence cited by the parties, that the indictment underlying the 1995
judgment alleges that the defendant was convicted of his first DWI offense on December 27,
1993--the date of Cloud's unchallenged 1993 conviction. (We note, however, that the 1995
indictment refers to the 1993 conviction by the same cause number as the 1995 conviction.) 
Though this commonality does not by itself prove Cloud's identity, it is an additional indicator
that the Cloud in the 1995 judgment is the same Cloud before us. We are cited to no evidence
that the Cloud convicted here was not the person named in the 1995 judgment; though Cloud had
no burden to produce such evidence, the absence of countervailing evidence is a factor to consider
in weighing the sufficiency of the evidence. We conclude the evidence is legally and factually
sufficient and overrule points two and three.


CONCLUSION


 Having overruled all points of error, we affirm the conviction.



 

 J. Woodfin