COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| COREY A. NIMITZ, | § | No. 08-07-00190-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 4 |
| THE STATE OF TEXAS, | § | |
| | | of Tarrant County, Texas |
| Appellee. | § | |
| | | (TC# 1029975D) |
| | § | |

**O P I N I O N**

This is an appeal from a conviction for burglary of a habitation. Trial was to the court, which found Appellant, Corey A. Nimitz, guilty and assessed his punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm the judgment of the trial court.

**I. SUMMARY OF THE EVIDENCE**

Keslynn Sutton and her mother, Tammy Fisher, lived in Mansfield, Texas. Sutton testified that she left her mother's house at noon on July 19, 2006, and that the doors and windows were locked upon her departure. Sutton returned to her mother's home approximately an hour later and discovered that two televisions, a DVD player, and her mother's bedspread were missing. Sutton walked out of the house, called her mother to inform her of the missing items, and then called the police. Additionally, Sutton testified that the missing items were later returned by the Appellant's father, Charles Nimitz.

Fisher testified that her daughter called her around lunchtime to inform her of the missing items. Fisher related that a television from the living room, a television from a bedroom, a DVD

player, a VCR, and a bedspread were taken. She described the bedspread as being a blanket or a comforter. Fisher testified that the police took pictures of her home, and she received her property back from Charles and from Corey's brother, Brent Nimitz. The Nimitz family were her neighbors, and they lived in the same house with Appellant.

At trial, Charles Nimitz testified that he saw his son Corey walking through his front yard, from the direction of Fisher's home, around 1-1:30 p.m. on July 19. Nimitz testified that he observed Corey carrying a blanket. Despite finding this unusual, Nimitz did not pursue Corey, but merely looked around the side of his house and did not see him. Charles stated that he was informed later in the day that Fisher's house had been burglarized, and he checked the storage shed in his backyard. Charles found a small TV wrapped in what he said may have been the blanket with which he had seen his son walking across the yard earlier in the day. However, when shown a picture of the blanket from Fisher's house, Nimitz was uncertain whether it was the same blanket he had seen Corey carrying.[1] Roughly thirty minutes after Charles had seen his son walk across his yard, police questioned him as to Corey's whereabouts. Charles told the police that Appellant had likely gone for a walk.

Mansfield Police Officer Thad Penkala testified that he took photographs of Fisher's home. The photos depicted broken glass on the floor and a broken window, where the window locks were pushed open and entry into the house occurred. After searching the Nimitz's house for Corey, the officer called additional units to the scene to canvass for him.

Mansfield Police Officer Michael Midkiff testified that he was one of the arresting officers. He stated that he found Appellant within a block or two of the crime scene, in a drainage ditch in a

---

[1] Charles thought that the blanket he had seen Corey carrying was a darker green, with other colors in it, and he could not tell whether the picture he saw depicted that.

wooded area. According to Officer Midkiff, when Appellant spotted his police car, he ran back into the woods. Officer Midkiff pursued Appellant in his patrol car, parked it, and chased Appellant on foot. Officers apprehended Appellant and placed him under arrest.

Appellant testified in his own defense. He stated that he did not burglarize Fisher's house. Rather, he said, he had washed one of his dogs the morning of July 19, and he used a pink towel to wash the dog. He further testified that he had not seen his father while he washed the dog. After washing the dog, Appellant stated that he went to a nearby gas station between 11:30 a.m. and noon, bought a six-pack of beer, and walked to the creek where he was subsequently found by Officer Midkiff. Appellant claimed that he had fled from the officers because he was drinking beer, in violation of the terms of his parole. Appellant's testimony was equivocal as to whether he had ever carried a blanket through the front yard, and he testified that he did not see his father on the front porch.[2] Appellant admitted five prior incidents of burglary during the 1990s.

## II. DISCUSSION

Appellant raises two issues in his appeal. His first contention is that the evidence against him is legally insufficient; his second, that it is factually insufficient. In both issues, Appellant argues that, in order to prove burglary of a habitation, the State needed to prove that he entered Fisher's home and that the State failed to do so. Additionally, he asserts that, despite the discovery of the stolen items in his father's shed, there is no proof that Appellant ever possessed the items, because other members of the family and hired workers also had access to the shed. Last, Appellant claims that he ran from police, not because he had burglarized Fisher's home, but because he did not want

---

[2] On direct examination, Appellant testified that he did not "remember" seeing his father on the front porch. On cross-examination, Appellant testified, first, that he "never carried a blanket through the front yard"; however, when asked, "If someone were to say that they [sic] saw you with a blanket, that statement would be untrue?" he replied, "No, ma'am, I don't say that's untrue."

the police to find him drinking alcohol, which was a violation of the conditions of his parole. For the reasons stated below, the evidence is legally and factually sufficient to sustain his conviction.

With regard to the issue of the legal sufficiency of the evidence, the court must consider all the evidence in a light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The court must use the evidence and reasonable inferences to determine whether a rational fact finder could have found the essential elements of the crime, beyond a reasonable doubt. *Id.* This standard does not require an appellate court to determine whether *it* believes the evidence beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789 (1979). In evaluating the legal sufficiency of the evidence, the court does not re-weigh the evidence, so great deference is given to the fact finder's[3] determination of the credibility of witnesses and weight of evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact finder is best positioned to review all of the evidence firsthand and make important credibility determinations. He has done so to a reasonable doubt and a verdict must stand, unless an appellate court finds it to be irrational or unsupported by more than a "mere modicum" of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). Our role in this determination is thus to act solely "as a final, due process safeguard ensuring . . . the rationality of the factfinder." *Johnson v. State*, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998) (quoting *Moreno*, 755 S.W.2d at 867).

In an appellate court's review of the record, all inconsistencies in testimony are to be resolved in favor of the verdict. *Moreno*, 755 S.W.2d at 867. The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State*, 900 S.W.2d 886,

---

[3] In a bench trial such as this, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Kmiec v. State*, 91 S.W.3d 820, 822 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd). We measure the legal sufficiency of the evidence in a nonjury trial by the elements of the offense as defined by a hypothetically-correct jury charge for the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

897 (Tex. App.--El Paso 1995, pet. ref'd).

In relevant part, a burglary occurs when, "without the effective consent of the owner, [a] person: (1) enters a habitation . . . with intent to commit . . . theft" or when he "(3) enters a . . . habitation and commits or attempts to commit a . . . theft . . . ." TEX. PENAL CODE ANN. § 30.02(a)(1), (3).

When there is independent evidence of a burglary, the unexplained possession of recently stolen goods may constitute sufficient evidence of guilt to support a conviction. *Harris v. State*, 656 S.W.2d 481, 483 (Tex. Crim. App. 1983). Mere possession of stolen property does not give rise to a *presumption* of guilt; rather, it will support an *inference* of guilt regarding the offense during which the property was stolen. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983). To warrant an inference of guilt based solely on the possession of stolen property, the State must establish that the possession was personal, recent, and unexplained. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). The inference of guilt is not conclusive, however, and the sufficiency of the evidence must still be examined according to applicable evidentiary standards of appellate review. *Hardesty,* 656 S.W.2d at 77. If the defendant explains his possession of the property, the record must demonstrate that the explanation is false or unreasonable. *Adams v. State*, 552 S.W.2d 812 (Tex. Crim. App. 1977); *Taylor v. State*, 921 S.W.2d 740, 744 (Tex. App.--El Paso 1996, no pet.). Such an explanation by the defendant must be made when first called upon directly or circumstantially to do so, which could include the time of his arrest. *Taylor*, 921 S.W.2d at 744. The State is not required to refute an explanation made for the first time at trial. *Id.*

Appellant's father testified that he saw his son, the Appellant, walking through his front yard from the direction of Fisher's home, carrying a blanket, between the hours of 1 and 1:30 p.m. on July 19. Sutton testified that she left the house around noon and returned roughly an hour later.

Appellant testified that he finished washing the dog and left his house around noon.

A conviction has been sustained, despite the fact that there was no physical evidence, such as fingerprints, linking the defendant to the burglarious entry into a habitation. *Rogers v. State*, 929 S.W.2d 103, 108 (Tex. App.--Beaumont 1996, no pet.). In *Rogers*, no one saw the defendant enter or exit the habitation, but witnesses did see him with items similar to those taken from the home. *Id.* at 104-06. The appellate court determined that the trial court made a rational decision in convicting the defendant, in light of the circumstantial evidence taken as a whole, and that the trial court was free to disregard the defendant's rendition of the events. *Id.* at 108.

A conviction has also been upheld where no one saw the defendant leave the house, but a witness did see the defendant leave the premises, walking across the road, into an open field, carrying items in his hands. *Thompson v. State*, 563 S.W.2d 247, 249-50 (Tex. Crim. App. [Panel Op.] 1978). The court found that "[w]hile presence at the scene of the offense, without more, is insufficient to support a burglary conviction, it is a circumstance tending to connect one with the crime and taken in conjunction with other facts may be sufficient to show that he is guilty." *Id.* at 250.

Both *Rogers* and *Thompson* provide factually similar scenarios, in which a conviction was upheld, despite the State's not proving actual entry into the habitation. Charles' testimony puts Appellant in the vicinity of the scene of the crime, carrying a blanket at least similar to that found in Charles' shed, to which Appellant had access. This piece of evidence alone may be insufficient; however, taken in conjunction with Appellant's equivocation about whether anyone saw him walking towards his father's house with a blanket supports a rational and reasonable conclusion that he was involved in the burglary.

Further support for Appellant's conviction is found in his flight from the police when he was

seen in the drainage ditch. Flight is a circumstance from which guilt can be inferred. *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989), *cert. denied*, 494 U.S. 1039 (1990); *Thompson*, 563 S.W.2d at 250. Appellant stated that he fled from the police upon being spotted, because he consumed alcohol and did not want to be held in violation of his parole conditions. However, it is left to the fact finder to determine whether to believe a defendant's explanation; the falsity of an explanation can be shown by circumstantial evidence. *Adams*, 552 S.W.2d at 815. It was rational for the judge to believe, in light of all the other circumstantial evidence against Appellant, that his flight was the result of a guilty conscience arising from the theft, rather than from alcohol consumption. We find that the evidence is legally sufficient to support the conviction. Issue No. One is overruled.

With regard to Issue No. Two, in a review of the factual sufficiency of the evidence, the appellate court reviews all of the evidence in a neutral light. *Johnson v. State*, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000). The court should set aside the verdict only if it is so weak as to be clearly wrong or manifestly unjust or if the adverse finding is against the great weight and preponderance of the available evidence. *Id.* at 11. The appellate court should be cognizant that a fact finder has already determined the facts and made a conviction; the court should never direct a new trial simply because it disagrees with the verdict. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). Furthermore, the review should give appropriate deference to the trial court as the proper determiner of the credibility of witnesses' testimony and the weight to be given to such testimony. *Johnson,* 23 S.W.3d at 7. In order to overturn the verdict, we must be able to say that no objective person could have convicted on the evidence presented. *Powell v. State*, 219 S.W.3d 498, 509 (Tex. App.--Fort Worth 2007, pet. ref'd).

Additionally, the existence of alternative reasonable hypotheses may be relevant to, though

not necessarily determinative of, a factual sufficiency review. *See Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). Although we may consider alternative hypotheses raised by the evidence, we may not set aside the fact finder's verdict, simply because we think another result is more reasonable. *See House v. State*, 105 S.W.3d 182, 183 (Tex. App.--Houston [14th Dist.] 2003, pet. ref'd).

We find that Appellant's hypotheses are unconvincing and do not account for critical portions of the evidence which support the judge's finding that he burglarized his neighbors' home. The available evidence shows that Appellant was in the area at the time of the crime; the items stolen from Fisher's house were discovered in Charles Nimitz's shed, to which Appellant had access; and Charles Nimitz saw Appellant walking across the yard from the direction of the neighbors' house, with a blanket in his hand on the day and at the time that the offense, which included theft of a blanket, occurred. On the other hand, there is no physical evidence of actual entry into Fisher's house by Appellant; there is no evidence that he had physical possession of any of the stolen items (with the possible exception of the missing blanket); and his father was uncertain that the blanket photographed by officers was the one he saw Appellant carrying.

While the evidence against Appellant is circumstantial, and reasonable people could certainly disagree about the verdict, we cannot conclude that the verdict is so weak as to be manifestly unjust or to be against the great weight and preponderance of evidence. It is not the role of the appellate court to substitute its judgment as to credibility determinations for that of the fact finder. *Powell*, 219 S.W.3d at 503. The appellate court is to give great deference to the fact finder, "because resolution of the conflict 'often turns on an evaluation of credibility and demeanor.'" *Id.* The trial court is better positioned to pass judgment on the credibility of witnesses, to believe or disbelieve the accounts put forward, and to make a decision of guilt or innocence.

The trial judge made an assessment of the credibility of Appellant's testimony, and the appellate court cannot overturn that assessment, because it is neither manifestly unjust nor against the great weight and preponderance of evidence. For the reasons stated above, the evidence in this case is factually sufficient to maintain a conviction, and Issue No. Two is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.


KENNETH R. CARR, Justice

November 6, 2008

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)