**Opinion issued February 27, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00721-CR

————————————

**JACOB JOSEPH HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1256018**

---

## MEMORANDUM OPINION

Following his guilty plea to aggravated assault of a public servant,[1] the trial

court deferred an adjudication of guilt and placed Jacob Joseph Hernandez on

---

[1]     *See* TEX. PENAL CODE ANN. §§ 12.32, 22.02(b)(2)(B) (West 2011).

community supervision for five years. The State subsequently filed a motion to adjudicate guilt alleging that he violated a condition of his community supervision and, on July 19, 2012, the trial court entered an order adjudicating appellant's guilt and sentencing him to fifteen years' confinement. Appellant contends that (1) the evidence was insufficient to support the trial court's finding that he had violated a condition of his community supervision and (2) the sentence assessed by the trial court was excessive and disproportionate to the crime committed. We affirm.

## Background

Following appellant's guilty plea to the charge of aggravated assault of a public servant, the trial court placed him on community supervision for five years and required him to wear a Global Positioning System (GPS) ankle monitor for a six-month period. On December 8, 2011, EZ Monitoring Services fitted appellant with a GPS ankle monitor.

As a witness for the State at the hearing on the motion to adjudicate, Shannon Burns Pena, one of the owners of EZ Monitoring Services, testified that a "strap tamper alert" from appellant's device was signaled on March 1, 2012, at 2:07 a.m.,[2] but the monitoring service's attempt to contact appellant was

---

[2] Pena testified that

[T]here is a fiberoptic cable that goes throughout the strap that connects from one side of the monitor to the other and it keeps it on the defendant's ankle. That fiberoptic cable sends a beam of light from one side to the

2

unsuccessful because the phone number appellant had provided did not work. A "tamper reset" signal was later received, indicating that the tamper had been cured. While continuing to monitor the device, Pena noticed that it had stopped registering movement and the only motion detected by the device over the next six days was when it was placed on and taken off of its charger. During this period, appellant's monitor remained at rest for twenty hours on one occasion and, on another occasion, reflected no motion for nearly two days. Pena testified that for a monitor to be at rest for more than fifteen minutes at a time was rare. On March 6, 2012, the monitoring service contacted appellant's mother and asked that appellant come to their office the next day. At 5:21 a.m. the next morning, the monitoring service received another strap tamper alert, followed thereafter by a tamper reset notification. Later that morning, appellant arrived at the monitoring service's office wearing the monitor. Pursuant to the trial court's order, the monitor, the strap of which had not been cut, was tested and verified to be properly functioning and able to detect motion. The court was notified of the tamper alerts.

On cross-examination, Pena testified that the device's batteries must be charged twice a day and, when fully charged, typically last approximately twelve hours but that the batteries occasionally lose their charge sooner. She did not know

other every second. And if that beam of light doesn't get all the way across during that second, then we are notified that there was a tamper.

3

whether appellant's device was a newer model or one of the original models acquired two years earlier. She occasionally had to return a device to the manufacturer, usually due to it not holding a charge. Based upon the monitoring, Pena testified that appellant's ankle monitor was removed on March 1 and returned to his ankle on March 7.

Several defense witnesses testified at the hearing. Appellant's wife, Karla Arias, and his mother, Mary Helen Velasquez, both testified that they never saw appellant tamper with his ankle monitor. Appellant's friend, Carlos Resendez, testified that he trusts appellant, had previously worked with appellant, and that he had a job waiting for him if he was released from custody. Appellant also testified and said that he had worn the monitor on his leg the entire time and that he had never removed it.

At the conclusion of the hearing, the trial court found by a preponderance of the evidence that appellant had violated the terms of his community supervision, adjudicated appellant guilty of aggravated assault of a public servant and sentenced him to fifteen years' confinement.

**Discussion**

**A. Sufficiency of the Evidence**

In his first point of error, appellant contends that the evidence was insufficient to support the trial court's revocation of his community supervision for

4

violating a condition of supervision. The State argues that the greater weight of the evidence supported the trial court's conclusion that appellant had violated a condition of his community supervision by tampering with his ankle monitor.

### 1. Standard of Review

On violation of a condition of community supervision imposed under an order of deferred adjudication, the defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. TEX. CODE CRIM. PROC. ANN. art. 42.12 § 5(b) (West Supp. 2012). The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of the conditions of community supervision. *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006).

The trial court's order revoking community supervision is reviewed under an abuse of discretion standard. *Id.* at 763. The trial court is the sole judge of the credibility of the witnesses and the weight given to their testimony, and the evidence is reviewed in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984) (en banc); *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *See Cardona*, 665 S.W.2d at 493–94. Proof by a preponderance of the evidence of any one of the alleged violations of the

conditions of community supervision is sufficient to support a revocation order. TEX. CODE CRIM. PROC. ANN. art. 42.12 § 21(b) (West Supp. 2012).

*2. Analysis*

The evidence established that as a condition of his deferred adjudication, appellant was to wear a GPS ankle monitor for six months and was fitted with the device on December 8, 2011. The monitoring service received two "strap tamper alerts" from appellant's monitor on the 1st and 7th of March, 2012. Appellant's device was regularly charged during this six-day period. Although unusual for a monitor to be at rest for more than fifteen minutes at a time, the monitor twice indicated no movement—once for a period of twenty hours and, later, for nearly two days. It was also during this period that the monitoring service was unable to contact appellant because the phone number he had provided was not in service. Upon inspection, the device continued to detect motion and function properly. The witness from the monitoring service testified that she believed that the ankle monitor was removed on March 1 and put back on appellant's ankle on March 7.

When viewed in the light most favorable to the decision to revoke, the trial court's determination that appellant violated a condition of his community supervision by tampering with his ankle monitor is supported by legally sufficient evidence. *See Cardona*, 665 S.W.2d at 493. Accordingly, we conclude that the

trial court did not abuse its discretion by proceeding with adjudication. Appellant's first point of error is overruled.

## B. Punishment

In his second point of error, appellant contends that the trial court erred in assessing punishment at fifteen years' confinement in violation of his rights against cruel and unusual punishment under the United States and Texas Constitutions because the sentence is excessive and grossly disproportionate to the offense committed. *See* U.S. CONST. amend. VIII, XIV; TEX. CONST. art. I., § 13. The State argues that appellant failed to preserve his claim for review and, even assuming it was preserved, appellant's sentence is not excessive or disproportionate.

To preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); *Blue v. State*, 41 S.W.3d 129, 139 (Tex. Crim. App. 2000) (en banc); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (holding that claim of grossly disproportionate sentence violative of Eighth Amendment was forfeited by failure to object). Appellant made no objection to his sentence at the hearing. Thus, he failed to preserve his complaint for our review.

However, even absent waiver, we conclude that appellant's sentence was not excessive or disproportionate. Appellant was indicted for aggravated assault of a public servant—a first-degree felony with a punishment range of imprisonment for life or for any term of not more than 99 years or less than five years and a possible fine up to $10,000. *See* TEX. PENAL CODE ANN. §§ 12.32, 22.02(b)(2)(B) (West 2013). Appellant's fifteen-year sentence and $500 fine are within the statutory range and well below the statutorily prescribed maximum. Generally, a sentence within the statutory range of punishment for an offense will not be held cruel or unusual under the Constitution of either Texas or the United States. *Ajisebutu v. State*, 236 S.W.3d 309, 314 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983)).

Although acknowledging that his sentence is within the permissible range of punishment, he nevertheless argues that it is disproportionate because he did not violate any other condition of his community supervision. Appellant's argument is misplaced. In *Solem v. Helm*, 463 U.S. 277, 292, 103 S. Ct. 3001, 3011 (1983), the United States Supreme Court set forth three objective criteria for appellate courts analyzing proportionality claims: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Only upon a determination that a sentence is grossly

8

disproportionate to the offense does an appellate court consider the remaining two factors. *Id.*; *Ajisebutu*, 236 S.W.3d at 313.

The fact that appellant was alleged to have violated only one of his conditions of community supervision has no bearing on the proportionality analysis because we look to the gravity of the *underlying offense,* not the violation of community supervision. *See Buerger v. State*, 60 S.W.3d 358, 365–66 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (defendant's fifteen-year sentence rested upon adjudication of guilt for crime alleged, not his violation of community supervision requirements that led to revocation of deferred adjudication); *see also Knight v. State,* No. 14–02–00615–CR, 2003 WL 1988555, at \*2 (Tex. App.—Houston [14th Dist.] May 1, 2003, pet. ref'd) (not designated for publication) (addressing constitutionality of appellant's twenty-five-year sentence based on offense of aggravated sexual assault of child, not the defendant's violation of community supervision requirements that led to revocation of deferred adjudication).

Appellant's fifteen-year sentence and $500 fine clearly fall within the permissible range for the charged offense, and are well below the statutorily prescribed maximum. Because appellant has not shown that his sentence was grossly disproportionate, we do not consider the remaining two factors. *See Solem*,

9

463 U.S. at 292; *Ajisebutu*, 236 S.W.3d at 313.  Appellant's second point of error is overruled.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).