**Rozzney Dandra ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–048CR.**

Court of Appeals of Texas, Beaumont.

Submitted March 28, 1996.

Decided Aug. 28, 1996.

Barry R. Bryan, Lufkin, for appellant.

Clyde M. Herrington, District Attorney, Lufkin, for the State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Burglary of a Habitation. Appellant waived his right to a jury trial and pleaded not guilty. The State elicited testimony from a number of witnesses while appellant was the lone witness for the defense. The trial court found appellant guilty, found enhancement allegations to be true, and assessed punishment at confinement in the Texas Department of Criminal Justice—Institutional Division for a term of thirty-five (35) years. Appellant's only complaint on appeal is that the evidence is insufficient to sustain the conviction. A rendition of the facts presented to the trial court is in order.

The State's first witness was Shondra Marie Glenn, the next-door neighbor to the complaining witness, Royce Cole. Shondra testified she was acquainted with appellant and on the day in question, August 17, 1994, appellant came to her house at about 10:30 a.m. Shondra stated she and appellant talked outside her house for a few minutes before she re-entered the house to change her baby's diaper. When Shondra came back outside, appellant was gone. She remembered that while they were conversing, appellant asked her if the complainant was at home. She replied she did not know.

Later that morning, Shondra observed appellant in front of the complainant's house talking to the complainant's mother, Lois Joshua. As appellant spoke to Ms. Joshua, Shondra noticed appellant had two bags, one brown and the other a small, black zipper-

bag. Appellant had the brown bag tucked into his pants behind his back and was holding the black bag in his hand also behind his back. Shondra opined that Ms. Joshua would not be able to see the bags as appellant had them positioned.

Following Ms. Joshua's departure, appellant walked over to Shondra and showed her a yellow camera inside the black leather bag. This was the only item Shondra observed as she did not look inside the brown bag. Appellant then caught a ride with a friend of Shondra's, Bobby Strippling.

The complainant, Royce Cole, was the State's next witness. He testified he left his home at about 8:15 or 8:20 a.m. on the day in question. He returned home sometime between 11:00 a.m. and 12:00 noon. He stated that upon entering his house, he noticed that someone had broken in through a window in the children's bedroom. He checked the house for missing property and determined the following items to be gone: a black camera "with a little yellow in it," two gold necklaces, one a flat-chain style and the other a rounded rope-chain style, and a gold lady's watch with the State of Texas outlined in diamonds on the face. Mr. Cole stated the camera was inside a small, "black-looking plastic or leather case."

Mr. Cole stated he knew appellant from school and appellant had been to his house on a couple of occasions. On cross-examination, Mr. Cole indicated the watch was unique as he had never seen another like it. Mr. Cole also testified none of the stolen items were ever recovered.

The complainant's mother, Lois Joshua was the next witness. She testified that "close to midday" she drove over to the complainant's house. As Ms. Joshua arrived at the house, she observed appellant in the driveway "pretty close to the house." She testified about her conversation with appellant as follows:

Q. [The State] Okay. What did he say?

A. [Ms. Joshua] I asked him if he seen Royce, and he said yes. And he said that

he had gone somewhere. And I said, "Well, I'm looking for him. You think he'll be back anyway soon?" And he said, "No, he probably won't because he left home with some shorts on. Usually when he leave home with shorts on he doesn't come right back."

\*  \*  \*  \*  \*  \*

Q. What did you tell him? Did you say that you were going to stay or go?

A. Yes. I said, "Well, if he's—maybe he's coming right back, and if he's coming right back maybe I can stay here for a little while and wait on him." He said, "No, if I was you, I wouldn't wait because he won't be back." And then he asked me if I knew him.

Q. Okay. And did he tell you his name?

A. Yes.

Q. Do you remember what that was?

A. He said—he asked me, he said, "Do you know me?" I said, "Well, I know your face," but I couldn't remember his name. And he said, "They call me Goat."

The State next called Carla Glenn. Carla is the sister of Shondra Glenn, and was appellant's girlfriend on the day in question. Carla confirmed appellant was known by the nickname of "Goat." Carla was also acquainted with the complainant as being her sister's neighbor. On the day in question, Carla received information appellant was involved in the burglary of the complainant's house. When she returned to her home, Carla found appellant there. An argument ensued and Carla told appellant to get his belongings and leave her house. During the course of this encounter, Carla stated she observed appellant in possession of a gold watch "with a Texas emblem in the middle," and a gold necklace "with a pendant on it." At some point during the argument, appellant allegedly responded with the words, "I don't know why I did it," to some sort of accusation put to him by Carla with regard to the burglary.[1] However, when asked by Carla if he had

1. The record before us is unclear as to the context of this allegedly inculpatory response by appellant. Carla was questioned by the State, appellant's trial counsel, and by the trial court on this specific point but her explanations provide little illumination as to just exactly what appellant was responding to.

entered the complainant's house, appellant responded he did not.

William Wayne McClendon of the Lufkin Police Department was the next witness for the State. Officer McClendon testified a call was received of a burglary at complainant's residence at 12:22 p.m. on August 17, 1994. He further stated that as he was in the front yard of complainant's residence talking to the complainant and Shondra Glenn, a pickup truck drove past. Officer McClendon was informed by the complainant that appellant was in the truck. McClendon entered his patrol unit and attempted to stop the truck. He stated that by the time he was able to catch up to the truck, he observed the passenger door of the truck to be open as the truck continued travelling along the street. McClendon eventually stopped the truck and identified the driver as Bobby Strippling. The passenger had apparently fled from the moving vehicle.

Bobby Strippling essentially corroborated Officer's McClendon's testimony and provided additional details of appellant's actions on the day in question. Strippling stated he was an acquaintance of Shondra Glenn and was at her house sometime midday on the day in question. Strippling identified appellant as also being there. He had not met appellant before that day. Strippling stated appellant offered him a couple of dollars for a ride to the post office. When appellant got into Strippling's pickup truck, appellant was in possession of two necklaces and a camera. Strippling described one necklace as being round and the other "a flat, gold chain." Strippling testified appellant stated he (appellant) was going to try to sell the necklaces. The camera was described by Strippling as blue with a little bit of yellow on it. The camera was inside a small, blue zipper-bag. Appellant had Strippling bring him to a house in Lufkin. Appellant entered, stayed a while, and then exited and got back into the pickup truck. The men then returned to Shondra Glenn's house. As they approached her house, they spotted the police unit. Appellant instructed Strippling to keep going. Strippling testified as soon as they passed Ms. Glenn's house appellant jumped out of the truck leaving the door open. Strippling stated he was travelling about 35 to 40 miles per hour at the time appellant jumped out. He stated appellant took off running.

Detective Byron Bridwell of the Lufkin Police Department was the State's final witness. Detective Bridwell investigated and eventually arrested appellant for the burglary involved in the instant case. The State elicited the following testimony from Detective Bridwell:

Q. [The State] Okay. And when you arrested him, where did you take him?

. . .

A. [Det. Bridwell] He was brought to the police department first, and then he was transferred to the county.

Q. Okay. And in the course of you dealing with Mr. Rogers, did he ever say anything to you that was not in response to any interrogation or questioning on your part?

A. Yes, sir. Rozzney—after we took him to the police department, one of the units that had a cage transported him from where he was arrested to the police department, and then we were going to transport him to the county. And we—they took him out. I was just standing there. They took him out of the cell and brought him into the book-in room, at which time Mr. Rogers asked me if he could talk to me.

And so I went back into the cell area where the women are kept, and he at this time he told me that he—that he could get the drug dealers off the street, knew the drug dealers and that—and I said, "Well," I said, "I don't know about that, Rozzney" or whatever. And then he made the comment, "Well, you can't prove I was in the house anyway." And I said, "Well, we'll just have to wait and see."

Detective Bridwell's cross-examination revealed the difficulty of this case from an evidentiary standpoint:

Q. [Trial Counsel] Did you take any fingerprints from Royce Cole's house?

A. [Det. Bridwell] No, sir.

Q. I believe there's a dirt driveway and a lot of raw dirt around the front of the house at Mr. Cole's?

A. Yes, sir. Yes, sir.

Q. Did you take any—check for any tennis-shoe prints or footprints?

A. No, sir, I did not....

\* \* \* \* \* \*

Q. So there's no positive ID of the person who went in Royce Cole's house, is there?

A. No, sir, not that I know—that actually seen him go into the house, no, sir, not that I know of.

Q. Or any physical evidence that would indicate who actually went in the house, like fingerprints or footprints?

A. No fingerprints or footprints, no, sir.

\* \* \* \* \* \*

Q. All right. And did you recover any of the property taken from Mr. Cole's house?

A. No, sir, did not.

\* \* \* \* \* \*

Q. Okay. So basically we don't have any physical evidence tying Mr. Rogers to going in that house, do we?

A. No, sir, I do not. I tried to recover some, but I—

Q. Or time of entry?

A. No.

Q. And we don't know of anything anybody else saw in Mr. Rogers' possession was, in fact, identical to what was taken out of Mr. Cole's house, do we?

A. No, sir. I don't know what—what you're referring to; but, no, sir.

Q. If somebody says they saw a chain or a bracelet or something that Mr. Rogers had, we don't know if that, in fact, is the same item taken out of Mr. Cole's house, do we?

A. That's correct. That's correct.

Appellant was the only witness to testify for the defense. His testimony as to his actions on the day in question generally coincided with the testimony of the State's witnesses. Appellant explained he acquired the watch, the two gold necklaces and the camera from "Donna and Melvin," two individuals that the earlier testimony of Shondra Glenn had indicated were not well thought of in the community for honesty. Appellant stated he gave Melvin and Donna two rocks of cocaine in exchange for the items. Appellant indicated that he encountered Melvin and Donna following his conversation with the complainant's mother. Appellant went on to explain the reason he jumped out of Bobby Strippling's pickup truck after spotting the police vehicle was appellant was in possession of "drugs." Appellant ran home after exiting the truck. Appellant denied having entered the complainant's house on the day in question. With regard to the complainant's property, appellant stated he gave the gold watch to Carla Glenn but he thought she threw the watch away. He further stated he threw away all of the rest of the property because he "didn't want to get caught with it."

When the issue of legal insufficiency is raised, our task is to consider all the record evidence in the light most favorable to the trial court's verdict and to determine whether, based on that evidence and all reasonable inferences therefrom, any rational trier of fact could have found appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex.Crim.App.1995). The test is the same for both direct and circumstantial evidence cases. *Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1020, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993). In performing our evaluation, we must resolve all evidentiary inconsistencies in favor of the verdict. *Johnson v. State*, 815 S.W.2d 707, 712 (Tex.Crim.App.1991) citing *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

In a bench trial, the trial court, as trier of fact, is the exclusive judge of the credibility of the witnesses, the weight to be given their testimony, and may accept or reject all or any part of the testimony of any witness. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App.1995); *Mattias v. State*, 731 S.W.2d 936, 940 (Tex.Crim.App.1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988), and cases cited therein.

In a prosecution for burglary of a habitation, an essential element of the offense is that the accused entered the habitation, absent an issue involving parties. *See*

TEX. PENAL CODE ANN. § 30.02(a) (Vernon 1994). "Enter" means to intrude any part of the body, or to intrude any physical object connected with the body. TEX. PENAL CODE ANN. § 30.02(b) (Vernon 1994). In the instant case, it is undisputed that neither appellant nor anyone else was seen entering or leaving the complainant's house. Furthermore, no fingerprint, footprint, or other direct identification evidence appears in the record before us.

Case law has established when there is independent evidence of a burglary, the unexplained personal possession of recently stolen property will support an inference of guilt of the offense in which the property was stolen. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex.Crim.App.1983). *Hardesty* overruled a long line of prior holdings by the Court of Criminal Appeals which stood for the proposition that evidence of a defendant's recent and unexplained possession of stolen property was sufficient, *in itself*, to sustain a conviction. *Id.* at 77. The *Hardesty* Court instead held that said unexplained possession was merely a circumstance of guilt and, as such, was not conclusive. *Id.* As the Court observed: "[o]nce the permissible inference arises, sufficiency of the evidence must still be examined according to applicable evidentiary standards of appellate review since the inference is not conclusive." *Id.*[2]

■ Taking this holding to the next step, unexplained possession of recently stolen property being merely a circumstance of guilt and not conclusive of guilt, a conviction can no longer fall because the property possessed was not shown to be the identical property taken, as had been previously held in a long line of cases. *See Owens v. State*, 576 S.W.2d 859 (Tex.Crim.App.1979); *York v.*

*State*, 511 S.W.2d 517 (Tex.Crim.App.1974); *Nelson v. State*, 505 S.W.2d 271 (Tex.Crim. App.1974); *Nichols v. State*, 479 S.W.2d 277 (Tex.Crim.App.1972); *Oliver v. State*, 69 Tex. Crim. 263, 153 S.W. 309 (1913); *Green v. State*, 31 S.W. 386 (Tex.Crim.App.1895). It is for the factfinder to weigh whatever descriptive evidence is presented regarding identification of the property missing *vis-a-vis* the property observed in the possession of the accused in order to reach the conclusion the property possessed was or was not the same property taken from inside the victim's residence. Other related circumstances of guilt include the particular setting in which the accused possessed the property in question as well as the specific type and quantity of the property possessed.

■ In conducting a review for legally sufficient evidence to sustain a conviction, appellate justices do not become factfinders, nor do they re-evaluate the weight and credibility of the record evidence. *Alvarado*, 912 S.W.2d at 207. Rather, the reviewing court acts only "as a final, due process safeguard ensuring ... the rationality of the factfinder." *Moreno*, 755 S.W.2d at 867. In the instant case, all of the evidence considered in the light most favorable to the trial court's verdict leads to a single, and quite rational, conclusion; appellant entered the complainant's house and unlawfully appropriated several items of jewelry and the camera. The trial court was free to disregard appellant's depiction of the events of the day in question. We simply cannot say that from the testimony of the various witnesses for the State it would be unreasonable to infer appellant did indeed effect entry into the complainant's house on the day in question. The circumstantial evidence was strong in this regard.

---

**2.** As was first noted by the Amarillo Court in *Price v. State*, 902 S.W.2d 677, 681 (Tex.App.—Amarillo 1995, no pet.), the Court of Criminal Appeals seems to continue to selectively rely on the old line of cases overruled in *Hardesty*. *See Solis v. State*, 792 S.W.2d 95, 98 (Tex.Crim.App. 1990). The most blatant incongruity appears to be contained in the following observations taken from the same paragraph in *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex.Crim.App.1984):

Normally, recent, unexplained possession of stolen property is a sufficient circumstance, in and of itself, to convict the possessor of stolen

property of the theft of the property.... However, mere possession of stolen property does not give rise to a presumption of guilt; it is only an inference of guilt, which is not conclusive of the defendant's guilt. *Hardesty v. State*, 656 S.W.2d 73 (Tex.Cr.App.1983).

A careful reading of *Hardesty* indicates it involved not just "mere possession," but also dealt with *recent* and *unexplained* possession of stolen property. *Hardesty*, 656 S.W.2d at 77. Therefore, any harmony between the two observations quoted above from *Sutherlin* is truly inexplicable.

We therefore overrule appellant's single point of error and affirm the judgment and the sentence of the trial court.

AFFIRMED.