COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-096-CR

 

 

ANTONIO LUIS GUZMAN                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant
Antonio Luis Guzman appeals his conviction, eighty-year sentence, and $10,000
fine for burglary of a habitation.  In
two issues, appellant contends that the evidence is legally and factually
insufficient to demonstrate that he committed the offense of burglary of a
habitation, aggravated assault.  In his
third issue, appellant complains that the trial court erred in not instructing
the jury on the lesser included offense of burglary.  We affirm.  

II. Background Facts

On
December 28, 2003, at approximately 4 a.m., Deputy James Gibbons responded to a
call that a car was on the railroad tracks at Rock Hill Road in Denton
County.  When he arrived at the scene,
he noticed that a car was on the tracks facing south, but that no one was
inside the car.  Deputy Gibbons then ran
a check on the car=s Oklahoma plates, which he
determined had been issued to appellant. 
Deputy Gibbons then left the railroad tracks to respond to another
call.  However, before he got to the
other location, he received a call that there was a burglary in progress at
Kathy Symula=s house and turned back
around.  When he arrived at the house,
Deputy Gibbons noticed that Symula had blood on her face and head.  After learning that appellant might still be
in the house, Deputies Gibbons and Pucket[2]
went to Symula=s bedroom[3]
and found appellant lying on her bed. 
Deputy Gibbons testified that appellant was either asleep or passed out.









The
officers then handcuffed appellant and moved him from the bed to the
floor.  Deputy Gibbons said that
appellant was calm when he was handcuffed, but that he thought appellant had
medical problems.  Appellant then told
the officers that he could not talk, so he was transported to the hospital by
EMS for medical attention.

Symula
was also transported to the hospital because of an injury to her head.  During the burglary, Symula sustained
injuries to her head, arm, and lip, including two black eyes.  The jury found appellant guilty of burglary
of a habitation and assessed his punishment at eighty years in the
Institutional Division of the Texas Department of Criminal Justice, plus a
$10,000 fine.

III.  Legal and Factual Sufficiency

In
two issues, appellant contends the evidence is legally and factually
insufficient to support his conviction for burglary of a habitation, aggravated
assault.[4]









A.  Standards of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979); Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App.
2005).








In
reviewing the factual sufficiency of the evidence to support a conviction, we
are to view all the evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in finding
guilt beyond a reasonable doubt.  Id.
at 484.  There are two ways evidence may
be factually insufficient:  (1) when the
evidence supporting the verdict or judgment, considered by itself, is too weak
to support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of conviction but still
be insufficient to prove the elements of the crime beyond a reasonable doubt.@  Id. at
485.  In other words, evidence
supporting a guilty finding can outweigh the contrary proof but still be
insufficient to prove the elements of an offense beyond a reasonable
doubt.  Id. 

In
performing a factual sufficiency review, we are to give deference to the fact
finder=s determinations, including
determinations involving the credibility and demeanor of witnesses.  Id. at 481; Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
We may not substitute our judgment for the fact finder=s.  Zuniga, 144
S.W.3d at 482.  

A
proper factual sufficiency review requires an examination of all the
evidence.  Id. at 484,
486-87.  An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

B.  Applicable Law








Section
30.02 of the penal code defines the offense of burglary.  See Tex.
Penal Code Ann. ' 30.02 (Vernon 2003).  A person commits the offense of burglary of
a habitation Aif, without the effective consent
of the owner, the person . . . (3) enters a building or habitation and commits
or attempts to commit a felony, theft, or an assault.@  Id. ' 30.02(a)(3). 
Section 22.01 of the penal code defines the offense of assault.  See id. ' 22.01 (Vernon Supp. 2005).  The statute provides,

(a) A person commits an offense if
the person:

(1) intentionally, knowingly, or recklessly causes bodily
injury to another, including the person=s spouse;

 

(2) intentionally or knowingly threatens another with
imminent bodily injury, including the person=s spouse; or

 

(3) intentionally or knowingly causes physical contact
with another when the person knows or should reasonably believe that the other
will regard the contact as offensive or provocative.  

 

Id.  Section 22.02 states, AA person commits [aggravated assault] if the person
commits assault as defined in ' 22.01 and the person . . . (2)
uses or exhibits a deadly weapon during the commission of the assault.@  Id. ' 22.02(a)(2).  

C.  Applicable Facts








At
trial, Deputy Gibbons testified that he received a call that there was a
burglary in progress at Symula=s house.  When he arrived at the house, Deputy Gibbons stated that he went
through the front door and saw Symula standing up with blood on her face and
head.  Symula told him and Deputy Pucket
that appellant might still be in the house. 
Deputies Gibbons and Pucket then went down the hallway and into Symula=s bedroom and found appellant lying on Symula=s bed wearing only two socks and one shoe.

Deputy
Gibbons testified that it appeared that there had been a struggle in Symula's
bedroom because the bedspread was twisted and there was broken glass and
furniture.  Deputy Gibbons stated that
there was a handgun and a bullet on the floor next to the foot of Symula's bed,
but that the slide of the handgun was missing.[5]

Jim
Broyles, a criminal investigator for the Denton County Sheriff's Office, stated
that he received a call that a burglary and aggravated assault had occurred at
Symula's house.  He stated that when he
arrived, he saw that appellant had several cuts and abrasions on his knee.








During
his investigation, Broyles noted that there were blood stains on Symula's
sheets by the pillow and that there was a wet pair of boxer shorts beside the
bed.  Broyles testified that the police
found appellant's other shoe underneath the bed.  Broyles said that it appeared that there had been a violent
struggle.  Additionally, Broyles stated
that it appeared, by the blood droplets, that appellant had gone through the
house and attempted to leave in Symula's car.[6]

Broyles
testified that the railroad tracks where appellant had abandoned his car were
visible from the window at Symula=s house.  Broyles further stated that the window in the vacant bedroom was
broken or pushed in and that this is where appellant entered the house.  Broyles found a shirt outside the vacant
bedroom window and a broken faucet cover outside the house.  Additionally, there was a shoe print next to
the shirt that matched the shoe that appellant was wearing.[7]  While tracing the area from appellant's car
to Symula's house, Broyles also found appellant's blue jeans and some money. 

Broyles
stated that there was hair in the handgun that was consistent with Symula's
hair.  Additionally, he said that the
bruising on Symula's left arm indicated that there was "some type of
struggle."








Symula
testified that she never gave consent for anyone to come into her house through
the window and that she did not give appellant consent to be in her house.  She stated that she went to bed around
midnight, and that she was awakened when she heard "something [that]
disturbed her" and that she saw Aboxers and a belly.@[8] 
Symula testified that she saw a bright light through the blinds in her
bedroom and saw a man looking out the window saying, AWhat are they doing, look what they're doing.@  Symula then sat up
in bed and said, ACan I help you, what do you need,
who are you[?]@ 
Symula told appellant to get out of her house.  Symula then got up and walked appellant out of her bedroom.  When she got him through the doorway of her
bedroom, she reached up and grabbed a handgun from a wall unit.  She stated that she had to go to a separate
drawer to get the clip and that when she assembled the gun, she chambered a
round.  Symula said that the gun was in
operating condition.

The
next thing that Symula remembered was that the barrel of the gun was
approximately fourteen inches from her head and that she screamed for her
daughter to call 911.  Symula said that
she saw the barrel pointed at her.  At
trial, Symula could not recall if she had been hit with anything before the
handgun was pointed at her.  Symula then
recalled that she had her hand on the telephone.








At
trial, Symula could not recognize appellant. 
Additionally, she did not remember getting medical attention and
testified that she lost four days from her memory.  She stated that the next thing that she remembered was telling
the emergency room staff to shave her head because they could not find where
she was bleeding.  Symula testified that
she received fourteen stitches in her face and twelve stitches in her head.  She said that she did not have any bruises
on her body when she went to bed that night.

D. 
Analysis

Appellant
contends that the evidence is legally and factually insufficient to demonstrate
that he committed the offense of burglary and aggravated assault.  Appellant argues that the State failed to
prove each element of the offense charged in the indictment.








To
begin with, appellant claims that the State failed to prove that appellant
entered the habitation without the effective consent of Symula.  However, the police found appellant=s footprint outside the broken window.  After Symula was awakened by appellant=s being in her bedroom, she immediately tried to get him
out of her house.  Additionally, appellant
was found inside the house when the officers arrived.  At trial, Symula testified that she did not give anyone consent
to enter her house through the window and that she did not give appellant
consent to be inside her house.  We
conclude that the evidence is legally and factually sufficient to show that
appellant entered Symula=s house without her consent.  

Additionally,
appellant argues that the State failed to prove that he committed or attempted
to commit a felony or theft inside Symula=s house.  Appellant uses Symula's statements that she could not identify
appellant as her assailant and that she could not remember what she was hit
with as support for his contention. 
However, identity may be proven by direct or circumstantial evidence.  Earls v. State, 707 S.W.2d 82, 85 (Tex.
Crim. App. 1986); see also Couchman v. State, 3 S.W.3d 155, 162 (Tex.
App._Fort Worth 1999, pet. ref'd).  Here, appellant had blood on her face and
head when the officers arrived, and Symula told the officers that appellant
might still be in the house. In addition, Broyles testified that Symula had
defensive wounds on her hands and that a bruise on her left arm indicated that
she had been involved in some type of struggle.  Further, appellant was found at the scene of the crime.  








We
hold that there was sufficient circumstantial evidence that appellant entered
Symula's habitation and assaulted her. See Rogers v. State, 929 S.W.2d
103, 108-09 (Tex. App._Beaumont 1996, no pet.) (holding circumstantial
evidence was sufficient to connect the defendant with the burglary). Appellant
was found passed out on Symula's bed. Additionally, the handgun with a hair
consistent with Symula's hair was found on the floor beside the bed. Further,
appellant's shoe and clothing was found outside the broken window where he
apparently entered the house. Although Symula could not remember what she was
hit with, she did testify that she remembered appellant=s pointing the handgun at her head. 

We
hold that the evidence, when viewed in the light most favorable to the verdict,
supports a determination beyond a reasonable doubt that appellant entered
Symula's habitation without her consent and that he assaulted her with a deadly
weapon (i.e., the handgun); therefore, we overrule appellant's first issue.  Additionally, when viewed neutrally, the
evidence is not so obviously weak or so greatly outweighed by contrary proof
that it would not support the finding of guilty beyond a reasonable doubt. We
overrule appellant's second issue. 

IV.  Lesser Included Offense

In
his third issue, appellant argues that the trial court erred in not giving the
jury an instruction on the lesser included offense of burglary.








We
use a two-pronged test to determine whether a defendant is entitled to an
instruction on a lesser included offense. 
Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919 (1993); Royster v. State, 622 S.W.2d 442, 446
(Tex. Crim. App. 1981).  First, the
lesser included offense must be included within the proof necessary to
establish the offense charged.  Salinas
v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005);  Rousseau, 855 S.W.2d at 672-73; Royster,
622 S.W.2d at 446.  Second, some
evidence must exist in the record that would permit a jury to rationally find
that if appellant is guilty, he is guilty only of the lesser offense.  Salinas, 163 S.W.3d at 741; Rousseau,
855 S.W.2d at 672-73; Royster, 622 S.W.2d at 446. 

A
person commits burglary if, Awithout the effective consent of
the owner, the person . . . enters a habitation, or a building (or any portion
of a building) not then open to the public, with intent to commit a felony,
theft, or an . . . assault.@ 
Tex. Penal Code Ann. ' 30.02(a)(1). 
Appellant was indicted for, Aintentionally or knowingly,
enter[ing] a habitation, without the effective consent of Kathy Symula, the
owner thereof, and . . . attempt[ing] to commit . . . aggravated assault of
Kathy Symula.@








Our
first inquiry is to determine whether section 30.02(a)(1), burglary, is a
lesser included offense of section 30.02(a)(3), burglary of a habitation.  See Royster, 622 S.W.2d at 446.
Appellant fails to cite to any case law that holds that section 30.02(a)(1) is
a lesser included offense of section 30.02(a)(3).  Therefore,
we deem this issue inadequately briefed.  See Tex. R. App. P. 38.1(h); Tong v. State, 25 S.W.3d 707,
710 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 1053 (2001).   

Regardless,
the State argues that section 30.02(a)(1) is not a lesser included offense of
section 30.02(a)(3) because the two subsections allege Adistinct manners and means in which [the offense of] . . .
burglary may be committed.@ 
See Tex. Penal Code Ann.
'' 30.02(a)(1), 30.02(a)(3); DeVaughn
v. State, 749 S.W.2d 62, 64-65 (Tex. Crim. App. 1988).  We agree. 








Section
30.02(a)(3) provides that a person commits burglary when he or she enters a Abuilding or habitation and commits or attempts to
commit a felony, theft, or an assault.@ 
Tex. Penal Code Ann. ' 30.02(a)(3) (emphasis added).  On the other hand, section 30.02(a)(1) states that a person
commits burglary when he or she enters a habitation or building Awith the intent to commit a felony, theft, or an assault.@  Tex. Penal Code Ann. ' 30.02(a)(1) (emphasis added).  Thus, section 30.02(a)(1) and section 30.02(a)(3) provide for
different means of committing one offense, burglary.  See DeVaughn, 749 S.W.2d at 64-65 (stating that there are Adistinct ways in which one may commit the offense of
burglary@). Therefore, we hold that the
offense of burglary as described in section 30.02(a)(1) is not a lesser
included offense of the offense of burglary as described in section
30.02(a)(3), and we overrule appellant=s third issue.

V. 
Conclusion

Having
overruled appellant=s three issues, we affirm the trial
court=s judgment.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL F:     LIVINGSTON,
DAUPHINOT, and HOLMAN, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 23, 2006











[1]See Tex. R.
App. P. 47.4.





[2]Deputy Gibbons testified that Deputy
Pucket was also present at the railroad tracks and Symula=s house, but Deputy Pucket did not testify at the trial.





[3]Symula=s bedroom was the master bedroom.





[4]The abstract paragraph in the jury
charge instructed the jury that, AA person commits aggravated
assault if the person commits an assault . . . and the person uses or exhibits
a deadly weapon during the commission of the assault.  A firearm is a deadly weapon.@





[5]The slide was later found during
the investigation.





[6]However, no DNA test was performed
on the blood droplets in the house or Symula=s car.  Therefore, this evidence does not conclusively establish that the
blood was appellant=s.  





[7]The shoe print matched the shoe
found underneath the bed.  The shoe that
appellant was wearing and the shoe found underneath the bed were a match.  





[8]Symula speculated that appellant
hit the beads that hung in her bedroom entrance, and that caused her to wake
up.