# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00050-CR

**Rayman Larnce Howard, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
NO. 34072, HONORABLE DONALD H. LANE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Rayman Larnce Howard was convicted by a jury of burglary of a building. Tex. Penal Code Ann. § 30.02(a)(1) (West 2003). The jury sentenced him to twenty years' confinement in the institutional division of the Texas Department of Criminal Justice and fined him $10,000. In two issues on appeal, appellant claims that the evidence is legally and factually insufficient to sustain the jury's verdict. We will affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that in the early afternoon of March 27, 2007, Scott Cowan, his wife Jasmine,[1] their infant child, and their friend Kirstie Torrez were driving to the Cowans'

---

[1] Because Scott, Jasmine, and Scott's mother Linda all share the Cowan surname, we refer to each by his or her first name.

trailer in the Deer Springs area of Burnet, Texas.[2] As they pulled into the Cowans' driveway, they saw a white, late-model Chevrolet pickup coming from their trailer. Scott testified that the driveway led only to their trailer. Torrez stated that "nobody's supposed to be down there unless it's a Cowan because that's their property." At trial, Scott, Jasmine, Torrez, and James "Junior" Smith, a neighbor, each described the truck as having an emblem of some sort on its side. All four witnesses identified the driver as the appellant. Scott, Jasmine, and Smith testified that the refrigerator from the Cowans' trailer was in the back of the truck.[3] According to the testimony of Scott, Jasmine, and Torrez, appellant stopped his truck, approached them, and asked where he could find someone named John or "Billy Talltale." None of the witnesses testified to knowing such a person. Scott further testified that appellant then drove off toward a dead end. Scott stated that he drove to his aunt's house, which was located on the same road. When they arrived, he told his mother, who was at the house, to call the police. Scott stated that he then saw appellant drive back past Scott's aunt's house heading in the opposite direction from that which he had first gone. Scott, Jasmine, and Torrez returned to their vehicle and followed appellant in order to take note of his license plate number. Scott testified that appellant "sped off" and that "his truck kind of jerked . . . and his dog fell out, and some of our CDs and a clock fell out, and he had to stop and get his dog."[4] Scott noted

---

[2] Scott's mother, Linda Cowan, owned the trailer that was burglarized. In his testimony, Scott refers to it as his. It appears from the evidence that some of the property stolen from the trailer belonged to Scott, and some belonged to Linda.

[3] Linda testified that she had purchased the refrigerator from her boss at the Quality Inn where she worked. The refrigerator was apparently very distinctive. It was a mini-refrigerator with a plastic front on it that had been used at the hotel to hold an information sheet.

[4] According to appellant's wife, the dog, described by Scott as a "brown wiener dog" with one grey eye and one brown eye, sustained only an abrasion above its eye.

2

that a PlayStation video game console and games for the PlayStation also fell out. It is unclear from the testimony of the other witnesses whether the items that came out of the truck were thrown out or fell out of the door, which may have been opened intentionally or may have flown open on its own. Scott testified that the items that fell out of the truck (except for the dog) belonged either to him or his family. Scott stated that appellant stopped his vehicle when the dog fell out, and he stopped behind appellant. Smith, who was standing nearby, testified that he called the dog over to him and then handed the dog back to appellant. Smith stated that appellant put the dog back in his truck and drove away. Scott testified that he had noted the license plate number of the truck when it was stopped, so he discontinued his pursuit of appellant and returned to his aunt's house to call the police.

Burnet County Sheriff's Office investigator Denton Wills, Jr., testified that he received a call about the burglary at 12:36 p.m. He said that while responding to the call, he observed a white truck matching the description of the suspect's vehicle. Wills initiated a traffic stop at 1:31 p.m. at the Red Top Bait Shop, which is located just west of Burnet. Wills testified that he identified himself to the driver, Samantha Wallace, appellant's common-law wife; appellant was in the passenger seat of the vehicle. Wills testified that he noticed that the appellant matched the description he had been given of the burglary suspect. When Wills questioned appellant, he denied any knowledge of the reported burglary. Wills further testified that the refrigerator that had been reported stolen was not in the bed of appellant's truck and that he did not search the cab of the truck for any smaller property. Wallace testified that appellant went with other law enforcement officers

3

while she and Wills went to her residence where, with her consent, officers performed a search. Wills testified that they found nothing related to criminal activity at Wallace's residence.

Burnet County Sheriff's Office deputy Steven Savoy testified that he responded to the burglary call as well. Savoy testified that he met Scott, Jasmine, Torrez, and Linda at Scott's aunt's house. Savoy stated that he individually interviewed the witnesses and obtained a description of the suspect and his vehicle. Savoy testified that he obtained an inventory of what had been stolen. Savoy did not take any fingerprints, nor did he find any physical evidence that there had been forced entry into the trailer. However, the inside of the trailer appeared to have been ransacked. Savoy stated that he was unable to determine how recent the ransacking had been. Scott testified that some televisions had not been taken by the burglar, but noted that the these items were prominently engraved with the Cowans' names.

Wallace testified that appellant left the house that morning to meet their friend Billy in Deer Springs. She stated that appellant was only gone for ten to fifteen minutes. She also testified that when appellant returned, he told her the dog had fallen out of the truck and that she noticed the dog had an abrasion above its eye.

## STANDARD OF REVIEW

In a legal-sufficiency review, a court must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "*it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Laster v. State*, No. PD-1276-07, 2009 Tex. Crim. App. LEXIS 5, at *6 (Tex. Crim. App. Jan. 14, 2009) (citing

4

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979)) (emphasis in original). "This standard accounts for the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319). It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In a factual-sufficiency review, we consider whether, after viewing the evidence in a neutral light, a rational trier of fact was justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We "must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury." *Lancon v. State*, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008). "A verdict should be set aside only if the evidence supporting the verdict is so weak as to render the verdict clearly wrong or manifestly unjust." *Id*. at 705; *Korell v. State*, 253 S.W.3d 405, 412 (Tex. App.—Austin 2008, pet. ref'd). Therefore, we will not reverse a judgment on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417.

A factual sufficiency review is "barely distinguishable" from a legal sufficiency review. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006), *cert. denied*, 128 S.Ct. 87 (2007). However, a court must begin its factual sufficiency review with the assumption that the evidence is legally sufficient under *Jackson*. *See Laster*, 2009 Tex. Crim. App. LEXIS 5, at *8.

5

Determining the legal and factual sufficiency of evidence requires the implementation of separate and distinct standards. *Id.* at \*10 (citing *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)). Courts and litigants should not combine their legal and factual sufficiency analyses. *Id.* While any analyses of the facts in a given case will naturally overlap, a separate review under the applicable standard is necessary to ensure that the law was properly applied. *Id*. at \*10-11. Therefore, we will examine appellant's claim of legal insufficiency before, and separate from, his claim of factual insufficiency.

## DISCUSSION

### Legal sufficiency

Appellant complains that the evidence presented at trial was legally insufficient to sustain a guilty verdict.

A person commits the offense of burglary if, without the effective consent of the owner, the person enters a building not then open to the public with the intent to commit theft. Tex. Penal Code Ann. § 30.02(a)(1) (West 2003). Guilt of burglary can be established circumstantially by the combined and cumulative force of all the incriminating circumstances, but proof of guilt by accompanying circumstances is subject to the same rigorous standard required of direct evidence, proof beyond a reasonable doubt. *Medrano v. State*, 658 S.W.2d 787, 790 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper*, 214 S.W.3d at 12. Circumstantial evidence alone can be sufficient to establish guilt. *Id.* Where there is independent evidence of a burglary,

6

unexplained possession of the recently stolen goods may constitute sufficient evidence of guilt to support a conviction. *Harris v. State,* 656 S.W.2d 481, 483 (Tex. Crim. App. 1983); *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.); *Rogers v. State*, 929 S.W.2d 103, 108 (Tex. App.—Beaumont 1996, no pet.). Recent, unexplained possession of stolen goods may give rise to an inference of guilt and may be sufficient to support a conviction for theft or burglary, depending on circumstances such as how close in time to the theft the defendant possessed the goods. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1978). While presence at the scene of the offense, without more, is insufficient to support a burglary conviction, it is a circumstance tending to connect one with the crime and, taken in conjunction with other facts, may be sufficient to show guilt. *Thompson v. State*, 563 S.W.2d 247, 250 (Tex. Crim. App. 1978). Flight is also a circumstance indicating guilt. *Hardesty*, 656 S.W.2d at 78; *Thompson*, 563 S.W.2d at 250.

In *Harris*, the complainant discovered her purse had been stolen from a friend's unlocked van while the two were briefly inside the friend's office building. 656 S.W.2d at 482. The complainant's friend instructed her to lock herself inside the office building and wait while he searched the area. *Id*. The friend found the complainant's makeup case in an alley and some of the contents of her purse in a trash dumpster. *Id*. A witness shortly thereafter saw the defendant enter the kitchen of the restaurant where he worked. *Id*. The owner of the restaurant arrived shortly thereafter and saw the man coming out of the "delivery room" (stock room). *Id*. Ultimately, the complainant's purse was found inside the restaurant's grease barrel, and the defendant was later found standing next to a car containing tools stolen from the complainant's friend's van. *Id*. at 483. He was also found in possession of the exact amount of cash stolen from the restaurant owner's

office. *Id*. The court found the evidence sufficient to sustain the defendant's conviction for burglary of a building and burglary of a vehicle. *Id*.

In *Rogers*, witnesses testified that they saw the defendant with items that had been reported stolen by the complainant. 929 S.W.2d at 105-06. The defendant was seen by a witness outside of the complainant's house. *Id*. at 105. The defendant later jumped out of a moving vehicle and fled from investigating police officers. *Id*. at 106. No fingerprints or footprints were taken by the police. *Id*. The stolen property was never recovered. *Id*. The court found the evidence legally sufficient to sustain the conviction. *Id*. at 108.

In the instant case, Scott, Jasmine, Torrez, and Smith testified that they saw the appellant in possession of the Cowans' property. Most notable among the items appellant had was a distinctive mini-refrigerator. He was found in possession of the property while coming from the direction of the Cowans' trailer. Torrez stated that "nobody's supposed to be down there unless it's a Cowan because that's their property." Scott stated that the driveway appellant was coming out of when he first saw him leads only to his trailer. A jury could have reasonably concluded that appellant was coming from the Cowans' trailer. Moreover, based on witnesses' testimony that appellant explained that he was looking for a "John" or a "Billy Talltale," the jury could reasonably have determined that appellant failed to provide a reasonable explanation for his presence in the vicinity of the Cowans' property, which the testimony depicts as a somewhat remote area.[5]

---

[5] Furthermore, given the use of the highly unlikely name "Billy Talltale," and the inconsistency of asking for one person first and another soon thereafter, the jury could have concluded that "Billy Talltale" was a fictitious person and that appellant was lying about his reason for being in the area.

Scott further testified that appellant "sped off" as he followed him while attempting to note his license plate number. Flight is a circumstance indicating guilt. *Hardesty*, 656 S.W.2d at 78; *Thompson*, 563 S.W.2d at 250. A jury could reasonably conclude that appellant was fleeing, having been caught leaving the scene of a burglary. Wallace's testimony corroborated the other witnesses' testimony that appellant's dog fell out of his truck while he sped away from the Cowans' property.

Appellant argues that because the house had not been visited for some time before the burglary, the evidence was legally insufficient to show that he burglarized the house. We disagree. A jury could have reasonably concluded that appellant was leaving the Cowans' trailer in possession of their property because he had recently burglarized the trailer. Appellant further argues that because he was later found not in possession of any of the items that were reported stolen, the evidence was legally insufficient. Witnesses testified to the contrary. Appellant was seen by Scott, Jasmine, Torrez and Smith in possession of the Cowans' property. A defendant need not be found in possession of stolen property by law enforcement officers. *See Rogers*, 929 S.W.2d at 105-07 (defendant was seen in possession of stolen camera and jewelry by two non-law enforcement witnesses, and the stolen property was never recovered). A jury could have reasonably concluded that appellant burglarized the house and disposed of the property in the approximately one hour between the time the burglary was reported and the time he was detained by law enforcement. We hold that given the combined and cumulative force of all the incriminating circumstances, a reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We therefore overrule appellant's first point of error.

9

*Factual sufficiency*

Appellant complains that the evidence presented at trial was factually insufficient to sustain a guilty verdict.

The heart of appellant's argument is that because no direct evidence established appellant's entry of the trailer, the evidence is factually insufficient to sustain his conviction. The law of this state is to the contrary. Where there is independent evidence of a burglary, unexplained possession of the recently stolen goods may constitute sufficient evidence of guilt to support a conviction. *Harris*, 656 S.W.2d at 483; *Rogers*, 929 S.W.2d at 108. Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper*, 214 S.W.3d at 12. Circumstantial evidence alone can be sufficient to establish guilt. *Id.* It was a reasonable inference for the jury to find that appellant had entered the Cowans' trailer, despite the absence of forensic or eyewitness evidence establishing entry. This inference is supported by testimony from multiple witnesses that appellant was in possession of the Cowans' property while pulling out of the Cowans' driveway. The jury was in the best position to evaluate the credibility of the witnesses, and we give due deference to its findings of fact. We find no objective basis in the record that would allow us to say that the great weight and preponderance of the evidence contradicts the verdict or that the verdict is clearly wrong or manifestly unjust. Viewing the evidence in a neutral light, but being cognizant that a jury has already passed on the facts and giving the jury's determinations due deference, we hold that the evidence was factually sufficient to sustain the jury's guilty verdict. We therefore overrule appellant's second point of error.

## CONCLUSION

The evidence was legally and factually sufficient to sustain the jury's guilty verdict. We affirm the judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   April 10, 2009

Do Not Publish