**Opinion issued June 17, 2014**



In The

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-13-00255-CR**

————————————

**DANTE COLEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1246997**

---

**MEMORANDUM OPINION**

A jury found Appellant guilty of the second-degree felony offense of

burglary of a habitation.[1]  The trial court assessed Appellant's sentence at 15 years

---

[1]  *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2011).

in prison.  On appeal, Appellant presents one issue, asserting that the evidence is insufficient to support the judgment of conviction.

We affirm.

## Background Summary

Resa Castillo, her husband, and two adult step-children lived in a home located on Sikes Road.  On the morning of December 2, 2009, all four of them left the house for work, leaving no one at home.

Around noon that same day, the Castillos' neighbor, P. Dupuis, was driving home from a doctor's appointment.  Dupuis was on a street near her home when she stopped to allow another car to pass.  She glanced at the driver, and he glanced at her.

Dupuis continued to drive toward her home.  When she approached the Castillos' home, Dupuis noticed a man that she did not recognize standing near the side of the Castillos' house.  Dupuis later identified the man as Appellant.  Dupuis thought Appellant looked suspicious because she did not recognize him as someone she had seen at the Castillos' home.

Dupuis slowed down her car and noticed that Appellant was facing the Castillos' house.  At first, Dupuis thought he was urinating on the side of the house.  But then, Dupuis saw Appellant raise his hands and look into a window of the home.  As Dupuis drove by the Castillos' house, Appellant turned and looked

2

at Dupuis, giving her a good view of Appellant's face. Dupuis then saw Appellant walk toward the back the Castillos' home. Dupuis pulled into her own driveway and could no longer see Appellant.

Dupuis sat in her driveway for two or three minutes, considering whether to call police to report the suspicious activity. She then saw Appellant running and heard the tires of a car squeal as it turned the corner on her street. The car quickly pulled into the driveway of the Castillos' house. By this point, Dupuis had gotten out of her truck and had walked to the street. She saw Appellant open the back door to the car. Dupuis could not see whether Appellant had anything in his hands when he opened the car's back door. Dupuis then saw Appellant get into the front passenger seat of the car. As the vehicle drove by her, Dupuis noticed that it was the same vehicle and the same driver that she had seen earlier at the intersection.

After the car left, Dupuis went to the Castillos' home. She knocked on the door but no one answered.

Resa Castillo's step-son, Jesus Castillo, was the first person home that evening. He noticed that a window next to the back door had been broken. Jesus also noticed that golf clubs next to window had been tipped over. It appeared to Jesus that someone had climbed through the broken window, knocking over the golf clubs. Jesus noticed that the DVD player was missing from the living room.

3

He then drove to the closest pawn shop about one-and-a-half miles away. There, he saw the family's DVD player.

Jesus called his step-mother, Resa, who owned the family's home. He told her about the burglary. Resa called the police. When the police arrived, Resa reported that three DVD players had been taken from her home along with 17 DVD movies.

Resa gave the police serial numbers for two of the DVD players and a list of the movies. The police went to the pawn shop and found two DVD players with serial numbers matching those given by Resa. The police also determined that the 17 movies identified by Resa and a third DVD player had been sold at the pawn shop.

The police obtained the pawn slip listing these items. The slip showed Appellant's name as the person selling the items. Appellant had also signed the pawn slip.

The police spoke to the clerk at the pawn shop who had been working at time the items were sold. The clerk, D. Hernandez, stated that Appellant had brought the three DVD players into the shop. He could not remember if Appellant also was carrying the DVD movies. Hernandez stated that another man was with Appellant in the shop. Although the man had come over to speak to Appellant during the sale, the man was not standing at the counter with Appellant during the

4

transaction. Hernandez said that Appellant was the person who negotiated the sale of the items.

Hernandez stated that he had looked at either Appellant's Texas identification card or driver's license. The identification number was noted on the pawn slip. The pawn slip indicated that the transaction had occurred at 12:13 p.m.

The police showed Herenandez a photo array, which included Appellant's picture. Hernandez identified Appellant as the man who had sold the three DVD players and the 17 movies belonging to Resa Castillo. Police also showed a photo array to Dupuis. She chose Appellant as the man she had seen at the Castillos' home on December 2, 2009.

Appellant was charged by indictment with burglary of a habitation. The indictment read as follows:

> Dante Coleman, hereafter styled the Defendant, heretofore on or about December 2, 2009, did then and there unlawfully, with intent to commit theft, enter a habitation owned by Resa Castillo, a person having a greater right to possession of the habitation than the Defendant and hereafter styled the Complainant, without the effective consent of the Complainant, namely, without any consent of any kind.

At trial, the State presented the testimony of the investigating police officers, P. Dupuis, Jesus Castillo, Resa Castillo, and David Hernandez. The pawn slip reflecting that Appellant had sold the stolen property was admitted into evidence. The photo arrays in which Hernandez and Dupuis identified Appellant were also admitted. Dupuis and Hernandez also identified Appellant at trial.

5

The jury found Appellant guilty of the offense of burglary of a habitation as charged in the indictment. Appellant choose to have the trial court assess his punishment. The court sentenced him to 15 years in prison. This appeal followed.

## Sufficiency of the Evidence

In one issue, Appellant asserts that the evidence is insufficient to support the judgment of conviction.

### A.     Standard of Review

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single standard of review set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970);

6

*Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative

7

force of all the incriminating circumstances is sufficient to support the conviction."

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**B.     Analysis**

As charged in the indictment, to establish that Appellant committed burglary of a habitation, the State had to prove that (1) Appellant (2) entered a habitation owned by Resa Castillo (3) without the effective consent of the Resa Castillo and (4) with intent to commit a theft.  *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2011).  There was no law-of-parties instruction in the jury charge.

On appeal, Appellant acknowledges that someone entered Resa Castillo's home with the intent to commit theft.  However, he asserts that the State failed to offer sufficient evidence to show that he entered the Castillo home.  In his brief, Appellant avers as follows:

> The jury was not given a parties charge, despite the fact that two people were potentially involved in the burglary of Ms. Castillo's home.  Ms. Dupuis saw two men at Ms. Castillo's home, only one of [whom] she identifies.  Mr. Hernandez testified that two men were in the pawnshop when Appellant pawned the stolen property.  There well may be evidence on this record to support Appellant's actions as a party to the burglary committed by the other man.  Without a parties charge given, this is not a basis on which the jury could base a conviction.

Absent an issue involving parties, the State must prove that the accused, as the primary actor, entered the habitation.  *Rogers v. State*, 929 S.W.2d 103, 107 (Tex. App.—Beaumont 1996, no pet.).  Burglarious entry can be proven through

8

circumstantial evidence. *See Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex. Crim. App. [Panel Op.] 1978). Direct evidence of entry is not required; that element may be established by inference, just as inferences may be used to prove the elements of any other offense. *See Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006).

Here, the State presented ample circumstantial evidence from which the jury could infer that Appellant was the person who entered the Castillo home. Dupuis's testimony placed Appellant at the Castillo home on the day of the burglary shortly before the stolen items were sold by Appellant at the pawn shop. Dupuis testified that she saw Appellant look into a window of the Castillo home and then saw him walk to the back of the home. Testimony of other witnesses showed that the burglar had gained entry to the home by breaking a window near the back door.

Dupuis further testified that she sat in her car a few minutes considering whether to call the police. Dupuis stated that Appellant then "ran out." At the time, she also heard the squeal of the tires. She looked and saw a car quickly pull into the Castillos' driveway. Appellant went to the car and opened the back door. Dupuis stated that Appellant had his back to her so she could not see whether Appellant was carrying anything. Dupuis testified that it was possible that Appellant was carrying something. Dupuis stated that she saw Appellant shut the back door. He then got into the front seat of the car, which then drove by her. It

was the same car and the same driver that she had seen earlier in the neighborhood as she drove home. Dupuis later identified Appellant in a photo array and at trial as the person who she saw at the Castillos' home.

A short time after Dupuis saw Appellant at the Castillos' home, Appellant sold the three DVD players and the 17 movies taken from the house at a nearby pawn store. The testimony of the pawn store clerk, D. Hernandez, established Appellant as the person who had carried the DVD players into the store. Hernandez did not remember whether Appellant had been carrying the movies. Hernandez stated that there was another man with Appellant in the store. The man spoke to Appellant while Appellant was standing at the counter; however, Herenandez was clear in his testimony that it was Appellant who had negotiated the sale of the DVD players and of the movies. The pawn slip, admitted into evidence, identifies Appellant as the person who sold the items. Hernandez later picked Appellant out of a photo array and identified Appellant at trial as the person who sold the stolen items.

Appellant asserts that the evidence "supports the other man burglarizing the house with Appellant, acting as a party, as a lookout and pawner." However, this theory ignores the evidence showing that it was Appellant who Dupuis saw at the Castillo residence peering in the window and then walking to the back of the home where the burglar gained entry through a broken window. It was also Appellant

10

who Dupuis saw run out a few minutes later to the car. She could not see whether Appellant was carrying anything because his back was to her. She testified that it was possible that Appellant was carrying something. She saw Appellant open the back door of the car and close it. He then got in the front passenger seat. No evidence was presented showing that the other man got out of the car at the Castillo home.

As in any case, the jury here was entitled to weigh and to resolve conflicts in the evidence presented and to draw reasonable inferences therefrom. *See Clayton*, 235 S.W.3d at 778. From the evidence presented, the jury could have reasonably inferred that it was Appellant who entered the Castillos' home. We note that the State was not required to disprove alternative reasonable hypotheses, such as that suggested by Appellant. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt."); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) ("We have rejected the reasonable hypothesis construct as a measure of legal sufficiency.").

Viewing the evidence in a light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that Appellant entered Resa Castillo's home with the intent to commit theft. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jones v. State*, 338 S.W.3d 725, 743

(Tex. Crim. App. 2012). We hold that the evidence is sufficient to support the judgment of conviction.

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

> Laura Carter Higley
> Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).