GUZMAN V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-096-CR

ANTONIO LUIS GUZMAN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Antonio Luis Guzman appeals his conviction, eighty-year sentence, and $10,000 fine for burglary of a habitation.  In two issues, appellant contends that the evidence is legally and factually insufficient to demonstrate that he committed the offense of burglary of a habitation, aggravated assault.  In his third issue, appellant complains that the trial court erred in not instructing the jury on the lesser included offense of burglary.  We affirm.  

II. Background Facts

On December 28, 2003, at approximately 4 a.m., Deputy James Gibbons responded to a call that a car was on the railroad tracks at Rock Hill Road in Denton County.  When he arrived at the scene, he noticed that a car was on the tracks facing south, but that no one was inside the car.  Deputy Gibbons then ran a check on the car’s Oklahoma plates, which he determined had been issued to appellant.  Deputy Gibbons then left the railroad tracks to respond to another call.  However, before he got to the other location, he received a call that there was a burglary in progress at Kathy Symula’s house and turned back around.  When he arrived at the house, Deputy Gibbons noticed that Symula had blood on her face and head.  After learning that appellant might still be in the house, Deputies Gibbons and Pucket
(footnote: 2) went to Symula’s bedroom
(footnote: 3) and found appellant lying on her bed.  Deputy Gibbons testified that appellant was either asleep or passed out. 

The officers then handcuffed appellant and moved him from the bed to the floor.  Deputy Gibbons said that appellant was calm when he was handcuffed, but that he thought appellant had medical problems.  Appellant then told the officers that he could not talk, so he was transported to the hospital by EMS for medical attention.

Symula was also transported to the hospital because of an injury to her head.  During the burglary, Symula sustained injuries to her head, arm, and lip, including two black eyes.  The jury found appellant guilty of burglary of a habitation and assessed his punishment at eighty years in the Institutional Division of the Texas Department of Criminal Justice, plus a $10,000 fine.

III.  Legal and Factual Sufficiency

In two issues, appellant contends the evidence is legally and factually insufficient to support his conviction for burglary of a habitation, aggravated assault.
(footnote: 4) 

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

Section 30.02 of the penal code defines the offense of burglary.  
See 
Tex. Penal Code Ann.
 § 30.02 (Vernon 2003).  A person commits the offense of burglary of a habitation “if, without the effective consent of the owner, the person . . . (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.”  
Id.
 § 30.02(a)(3).  Section 22.01 of the penal code defines the offense of assault.  
See id
. § 22.01 (Vernon Supp. 2005).  The statute provides,

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person’s spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person’s spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.  

Id.  
Section 22.02 states, “A person commits [aggravated assault] if the person commits assault as defined in § 22.01 and the person . . . (2) uses or exhibits a deadly weapon during the commission of the assault.” 
 Id.
 § 22.02(a)(2).  

C.  Applicable Facts

At trial, Deputy Gibbons testified that he received a call that there was a burglary in progress at Symula’s house.  When he arrived at the house, Deputy Gibbons stated that he went through the front door and saw Symula standing up with blood on her face and head.  Symula told him and Deputy Pucket that appellant might still be in the house.  Deputies Gibbons and Pucket then went down the hallway and into Symula’s bedroom and found appellant lying on Symula’s bed wearing only two socks and one shoe.

Deputy Gibbons testified that it appeared that there had been a struggle in Symula's bedroom because the bedspread was twisted and there was broken glass and furniture.  Deputy Gibbons stated that there was a handgun and a bullet on the floor next to the foot of Symula's bed, but that the slide of the handgun was missing.
(footnote: 5)
 Jim Broyles, a criminal investigator for the Denton County Sheriff's Office, stated that he received a call that a burglary and aggravated assault had occurred at Symula's house.  He stated that when he arrived, he saw that appellant had several cuts and abrasions on his knee.

During his investigation, Broyles noted that there were blood stains on Symula's sheets by the pillow and that there was a wet pair of boxer shorts beside the bed.  Broyles testified that the police found appellant's other shoe underneath the bed.  Broyles said that it appeared that there had been a violent struggle.  Additionally, Broyles stated that it appeared, by the blood droplets, that appellant had gone through the house and attempted to leave in Symula's car.
(footnote: 6)
 Broyles testified that the railroad tracks where appellant had abandoned his car were visible from the window at Symula’s house.  
Broyles further stated that the window in the vacant bedroom was broken or pushed in and that this is where appellant entered the house.  Broyles found a shirt outside the vacant bedroom window and a broken faucet cover outside the house.  Additionally, there was a shoe print next to the shirt that matched the shoe that appellant was wearing.
(footnote: 7)  While tracing the area from appellant's car to Symula's house, Broyles also found appellant's blue jeans and some money. 

Broyles stated that there was hair in the handgun that was consistent with Symula's hair.  Additionally, he said that the bruising on Symula's left arm indicated that there was "some type of struggle."

Symula testified that she never gave consent for anyone to come into her house through the window and that she did not give appellant consent to be in her house.  She stated that she went to bed around midnight, and that she was awakened when she heard "something [that] disturbed her" and that she saw “boxers and a belly.”
(footnote: 8)  Symula testified that she saw a bright light through the blinds in her bedroom and saw a man looking out the window saying, “What are they doing, look what they're doing.”  Symula then sat up in bed and said, “Can I help you, what do you need, who are you[?]”  Symula told appellant to get out of her house.  Symula then got up and walked appellant out of her bedroom.  When she got him through the doorway of her bedroom, she reached up and grabbed a handgun from a wall unit.  She stated that she had to go to a separate drawer to get the clip and that when she assembled the gun, she chambered a round.  Symula said that the gun was in operating condition.

The next thing that Symula remembered was that the barrel of the gun was approximately fourteen inches from her head and that she screamed for her daughter to call 911.  Symula said that she saw the barrel pointed at her.  At trial, Symula could not recall if she had been hit with anything before the handgun was pointed at her.  Symula then recalled that she had her hand on the telephone.

At trial, Symula could not recognize appellant.  Additionally, she did not remember getting medical attention and testified that she lost four days from her memory.  She stated that the next thing that she remembered was telling the emergency room staff to shave her head because they could not find where she was bleeding.  Symula testified that she received fourteen stitches in her face and twelve stitches in her head.  She said that she did not have any bruises on her body when she went to bed that night.

D.  Analysis

Appellant contends that the evidence is legally and factually insufficient to demonstrate that he committed the offense of burglary and aggravated assault.  Appellant argues that the State failed to prove each element of the offense charged in the indictment.

To begin with, appellant claims that the State failed to prove that appellant entered the habitation without the effective consent of Symula.  However, the police found appellant’s footprint outside the broken window.  After Symula was awakened by appellant’s being in her bedroom, she immediately tried to get him out of her house.  
Additionally, appellant was found inside the house when the officers arrived.  At trial, Symula testified that she did not give anyone consent to enter her house through the window and that she did not give appellant consent to be inside her house.  We conclude that the evidence is legally and factually sufficient to show that appellant entered Symula’s house without her consent.  

Additionally, appellant argues that the State failed to prove that he committed or attempted to commit a felony or theft inside Symula’s house.  Appellant uses Symula's statements that she could not identify appellant as her assailant and that she could not remember what she was hit with as support for his contention.  However, identity may be proven by direct or circumstantial evidence. 
 Earls v. State
, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); 
see also Couchman v. State
, 3 S.W.3d 155, 162 (Tex. App.སྭFort Worth 1999, pet. ref'd).  Here, appellant had blood on her face and head when the officers arrived, and Symula told the officers that appellant might still be in the house. In addition, Broyles testified that Symula had defensive wounds on her hands and that a bruise on her left arm indicated that she had been involved in some type of struggle.  Further, appellant was found at the scene of the crime.  

We hold that there was sufficient circumstantial evidence that appellant entered Symula's habitation and assaulted her. 
See Rogers v. State
, 929 S.W.2d 103, 108-09 (Tex. App.སྭBeaumont 1996, no pet.) (holding circumstantial evidence was sufficient to connect the defendant with the burglary). Appellant was found passed out on Symula's bed. Additionally, the handgun with a hair consistent with Symula's hair was found on the floor beside the bed. Further, appellant's shoe and clothing was found outside the broken window where he apparently entered the house. Although Symula could not remember what she was hit with, she did testify that she remembered appellant’s pointing the handgun at her head. 

We hold that the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that appellant entered Symula's habitation without her consent and that he assaulted her with a deadly weapon (i.e., the handgun); therefore, we overrule appellant's first issue.  Additionally, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt. We overrule appellant's second issue. 

IV.  Lesser Included Offense

In his third issue, appellant argues that the trial court erred in not giving the jury an instruction on the lesser included offense of burglary.

We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser included offense.  
Rousseau v. State
, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 919 (1993); 
Royster v. State
, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  First, the lesser included offense must be included within the proof necessary to establish the offense charged.  
Salinas v. State
, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005);  
Rousseau
, 855 S.W.2d at 672-73; 
Royster
, 622 S.W.2d at 446.  Second, some evidence must exist in the record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of the lesser offense.  
Salinas
, 163 S.W.3d at 741; 
Rousseau
, 855 S.W.2d at 672-73; 
Royster
, 622 S.W.2d at 446. 

A person commits burglary if, “without the effective consent of the owner, the person . . . enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an . . . assault.”  
Tex. Penal Code Ann.
 § 30.02(a)(1).  
Appellant was indicted for, “intentionally or knowingly, enter[ing] a habitation, without the effective consent of Kathy Symula, the owner thereof, and . . . attempt[ing] to commit . . . aggravated assault of Kathy Symula.”

Our first inquiry is to determine whether section 30.02(a)(1), burglary, is a lesser included offense of section 30.02(a)(3), burglary of a habitation.  
See Royster
, 622 S.W.2d at 446. Appellant fails to cite to any case law that holds that section 30.02(a)(1) is a lesser included offense of section 30.02(a)(3).  
Therefore, we deem this issue inadequately briefed. 
 
See 
Tex. R. App. P.
 38.1(h); 
Tong v. State
, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 1053 (2001). 
 

Regardless, 
the State argues that section 30.02(a)(1) is not a lesser included offense of section 30.02(a)(3) because the two subsections allege “distinct manners and means in which [the offense of] . . . burglary may be committed.”  
See 
Tex. Penal Code Ann.
 §§ 30.02(a)(1), 30.02(a)(3); 
DeVaughn v. State
, 749 S.W.2d 62, 64-65 (Tex. Crim. App. 1988).  We agree. 

Section 30.02(a)(3) provides that a person commits burglary when he or she enters a “building or habitation 
and 
commits or attempts to commit a felony, theft, or an assault.”  
Tex. Penal Code Ann.
 § 30.02(a)(3) (emphasis added).  On the other hand, section 30.02(a)(1) states that a person commits burglary when he or she enters a habitation or building “
with the intent 
to commit a felony, theft, or an assault.”  
Tex. Penal Code Ann.
 § 30.02(a)(1)
 (emphasis added).  Thus, section 30.02(a)(1) and section 30.02(a)(3) provide for different means of committing one offense, burglary.  
See DeVaughn
, 749 S.W.2d at 64-65 (stating that there are “distinct ways in which one may commit the offense of burglary”). Therefore,
 we hold that the offense of burglary as described in section 30.02(a)(1) is not a lesser included offense of the offense of burglary as described in section 30.02(a)(3), and we overrule appellant’s third issue.

V.  Conclusion

Having overruled appellant’s three issues, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 March 23, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Deputy Gibbons testified that Deputy Pucket was also present at the railroad tracks and Symula’s house, but Deputy Pucket did not testify at the trial.

3:
Symula’s bedroom was the master bedroom.

4:
The abstract paragraph in the jury charge instructed the jury that, “A person commits aggravated assault if the person commits an assault . . . and the person uses or exhibits a deadly weapon during the commission of the assault.  A firearm is a deadly weapon.”

5:
The slide was later found during the investigation.

6:
However, no DNA test was performed on the blood droplets in the house or Symula’s car.  Therefore, this evidence does not conclusively establish that the blood was appellant’s.  

7:
The shoe print matched the shoe found underneath the bed.  The shoe that appellant was wearing and the shoe found underneath the bed were a match.  

8:
Symula speculated that appellant hit the beads that hung in her bedroom entrance, and that caused her to wake up.